JOHNSON, Appellee,

v.

JOHNSON, Appellant.

[Cite as *Johnson v. Johnson* (1991), 71 Ohio App.3d 713.]

Court of Appeals of Ohio,
Portage County.

No. 89-P-2119.

Decided April 2, 1991.

*Ronald J. Kane*, for appellee.

*Thomas R. Buchanan*, for appellant.

FORD, Presiding Judge.

This is an appeal from the trial court's finding that appellant was in willful contempt of court for failing to pay child support pursuant to a court order.

In 1969, appellee Betty Jo Johnson sought a divorce from appellant John E. Johnson. Appellant was duly served with process by publication, and was found in default of an answer or other pleading. A divorce was granted, appellee was awarded sole custody of the three children, and appellant was ordered to pay $20 per week, per child for support.

Appellant never complied with the order. Appellee attempted to enforce the order during 1972–1973, but was unable to collect because appellant changed jobs and addresses. In 1977, after all of the children either became emancipated or reached majority, there was occasional contact between two of the children, Phyllis and Robert, and appellant. However, appellee testified that she knew the general location of appellant, but did not know of his specific residence. Appellee testified that she learned of appellant's location two months prior to the instant action, in April 1989.

The trial court found that appellant was in willful contempt for failure to pay child support and entered judgment in the amount of $19,300 on June 1, 1989. Moreover, the court ordered appellant, subject to execution of the judgment, to pay $60 per week plus poundage on the judgment, by wage assignment, from his wages, disability benefits or Social Security benefits.

Appellant has not contested the accuracy of the amount of the judgment. He raises the following assignment of error:

"The judgment of the trial court was against the manifest weight of the evidence."

In the sole assignment of error, appellant maintains that the judgment of the trial court was against the manifest weight of the evidence because there was no competent, credible evidence to support the trial court's conclusion that appellant was in willful contempt of the court for failure to pay child support.

In addition, appellant asserts the defense of laches, stating that appellee waived her right to collect child support because she has known of appellant's location for fourteen years and failed to attempt enforcement.

"The law in Ohio is clear that an appellate court will not disturb the findings of the trier of fact unless they are against the manifest weight of the evidence. *Landis v. Kelly* (1875), 27 Ohio St. 567; *State ex rel. Shady Acres Nursing Home, Inc. v. Rhodes* (1983), 7 Ohio St.3d 7 [7 OBR 318, 455 N.E.2d 489]. Moreover, if the judgment of the trial court is supported by some competent, credible evidence, it will not be reversed by a reviewing court as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction Co.* (1978), 54 Ohio St.2d 279 [8 O.O.3d 261, 376 N.E.2d 578]; *State ex rel. Shady Acres Nursing Home, Inc., supra.*" *Kinney v. Mathias* (1984), 10 Ohio St.3d 72, 73–74, 10 OBR 361, 362, 461 N.E.2d 901, 903.

The test for laches in the present situation was set forth by the Supreme Court in *Smith v. Smith* (1959), 168 Ohio St. 447, 7 O.O.2d 276, 156 N.E.2d 113, at paragraph three of the syllabus, which provides: "Delay in asserting a right does not of itself constitute laches, and in order to successfully invoke the equitable doctrine of laches it must be shown that the person for whose benefit the doctrine will operate has been materially prejudiced by the delay of the person asserting his claim." Additionally, as noted in *Smith, supra,* at 455, 7 O.O.2d at 280, 156 N.E.2d at 119, during the delay in the assertion of rights, the complainant must have had knowledge or notice of the defendant's conduct and have been afforded an opportunity to institute suit.

There is disagreement in the evidence in the present case regarding appellee's knowledge of appellant's location. While appellant failed to appear

during the hearing in the trial court, his counsel attempted to show inconsistencies in appellee's and the witnesses' testimony that appellee did not have knowledge of appellant's whereabouts.

Appellee maintained that appellant concealed his residence and, in fact, moved to a different location and secured new employment when she initially sought enforcement during 1972–73. Moreover, appellee testified, without objection, that appellant told their daughter Phyllis that he went into Wisconsin, because "your mother almost caught up with me once." Phyllis also testified that appellant tried to keep his location secret, and that he lied to her about his address for a short period of time in 1977. Additionally, Phyllis was questioned as to whether appellant had ever said anything to her about why he did not pay child support. In response, Phyllis testified that appellant told her that "sometimes you make a mistake and you learn by that mistake and you go on and, you know, you realize you wish you hadn't done that. But he told me if he had it to do over with, he would have done it the same way, that there was no way he would have changed."

Appellant, in response, argued that the parties' son Robert lived with him for a month in 1978, and appellee had an opportunity to discover the address from Robert.

Appellee contended that she never asked Robert for appellant's address because she believed she would have the same enforcement problem as before. (Presumably, appellant would change states and secure different employment.)

Resolution of the issue of whether appellee knew of appellant's address or had an opportunity to assert her rights is a factual issue. It is undisputed that in 1977 appellee became aware that appellant's general location was somewhere in Wisconsin, when he started occasionally contacting the children at that time. However, appellant never successfully disputed that appellee did not know or had never learned of his address in Wisconsin or any other particulars about his existence there.

More important, appellant has never indicated to the trial court or in his brief to this court how, if at all, the delay in enforcing the support order has materially or legally prejudiced him.

■ Appellant merely asserts that he should have been able to justifiably rely on his belief that appellee was not interested in the child support because she had not attempted to collect it since 1977. In essence, appellant fails to establish any hardship. It is clear that length of time alone is not sufficient to constitute a material prejudice. *Smith, supra.* Moreover, "[t]he mere inconvenience of having to meet an existing obligation imposed * * * by an order

or judgment of a court of record at a time later than that specified in such * * * order cannot be called material prejudice." *Smith, supra,* at 457, 7 O.O.2d at 281, 156 N.E.2d at 120. Absent sufficient assertions or proof of hardship which rises to the required level of prejudice, the doctrine of laches may not be invoked per *Smith, supra.*

■ It bears mentioning that throughout appellant's argument, he asserts that appellee never demonstrated that he *willfully* refused to pay child support.

First of all, regardless of whether appellant's acts were willful or otherwise, the law is clear in Ohio that parents have a duty to support their children. See *State ex rel. Wright v. Indus. Comm.* (1943), 141 Ohio St. 187, 25 O.O. 277, 47 N.E.2d 209. Most recently, in *Bercaw v. Bercaw* (1989), 45 Ohio St.3d 160, 543 N.E.2d 1197, the Supreme Court reiterated the principle that:

" * * * [P]arents have continuing support obligations to their children. These obligations are defined by statute and the common law. * * * Society expects that those who bring children into this world will care for and attend to those children. * * * Until such termination of parental support obligations occurs, a parent may not unilaterally cease supporting his minor children. Consequently, while parents may divorce from each other, they may not divorce from their children." (Citations omitted.) *Bercaw, supra,* at 161, 543 N.E.2d at 1199.

Furthermore, "proof of purposeful, willing or intentional violation of court order is *not* a prerequisite to a finding of contempt." (Emphasis *sic.*) *Pugh v. Pugh* (1984), 15 Ohio St.3d 136, 140, 15 OBR 285, 288, 472 N.E.2d 1085, 1088. The trial court did find appellant in "willful" contempt. However, the court's use of the term "willful" does not dictate that intention or willfulness must be shown. On the contrary, the proper focus is whether civil or criminal contempt is imposed. " '[C]ourts distinguish criminal and civil contempt not on the basis of punishment, but rather, by the character and purpose of punishment.' " *Pugh, supra,* at 139, 15 OBR at 287, 472 N.E.2d at 1088. The court in *Pugh* also stated that " '[p]unishment is remedial or coercive and for the benefit of the complainant in civil contempt. Prison sentences are conditional. * * * Criminal contempt, on the other hand, is usually characterized by an unconditional prison sentence.' " (Citations omitted.) *Id.*

Moreover, " '[t]he absence of willfulness does not relieve from civil contempt. Civil as distinguished from criminal contempt is a sanction to enforce compliance with an order of the court or to compensate for losses or damages sustained by reason of noncompliance. * * * ' " (Citations omitted.) *Id.* at 140, 15 OBR at 288, 472 N.E.2d at 1089.

In the instant case, the court entered judgment to enforce compliance, as well as to compensate appellee for losses sustained by appellant's noncompliance with the 1969 child support order; the court did not impose any jail sentence or other contempt sanction. Accordingly, the action was a civil contempt proceeding and proof of willfulness is not a prerequisite per *Pugh, supra.*

Assuming, *arguendo,* that willfulness was an essential element, appellee's and her daughter Phyllis's unrefuted testimony provided ample corroboration of appellant's willful failure to pay child support.

Generally, appellant's contentions are assertions that the testimony of appellee and the witnesses was inconsistent with respect to his claim of laches and appellee's position with respect to his disregard of his support obligation. These issues are for the trier of fact.

"The appellate court will not pass on the credibility of witnesses which is a question solely for the determination of the jury. Further, the appellate court will not pass on the credibility of witnesses which is [a] question for the trial court in cases tried without a jury, or a master, auditor, or referee before whom the witness testified. The reason is that the judge or the jury who see and hear the witnesses testify and who observe their demeanor and appearance on the witness stand are in a better position to determine the credibility of the witnesses than the appellate court is by reading their evidence as it appears in the record." 5A Corpus Juris Secundum (1958) 241–253, Appeal & Error, Section 1645.

It should be noted that the evidence discloses that appellant at all times had knowledge of appellee's and the children's whereabouts because he was able to contact them and maintain some form of communication.

Therefore, based on the foregoing analysis and the testimony presented to the court, which was essentially undisputed by appellant, there was sufficient competent, credible evidence to enable the trial court to determine that appellant was in willful contempt for failure to pay child support.

For the foregoing reasons, the judgment of the trial court is affirmed.

*Judgment affirmed.*

NADER and CHRISTLEY, JJ., concur.