[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
Jean Cupp appeals from the judgment of the Allen County Court of Common Pleas which denied her motion for restricted visitation and denied her motion for modification of child support.
Jean and Kenneth ("Ken") Cupp were divorced on February 7, 1994. Pursuant to an agreed shared parenting plan, Jean was designated residential parent of Abby, (D.O.B. 8-13-86) and Jedediah ("Jed") Cupp, (D.O.B. 3-23-88). Ken was designated their non-residential parent and afforded rights of companionship pursuant to local rule.
On June 20, 1997, Ken filed a motion requesting a contempt citation be issued against Jean because she denied Ken three days of summer visitation with Abby and Jed. On July 23, 1997, Jean filed a motion for restricted visitation alleging that Ken was abusive towards the children. Upon Jean's request, the magistrate conducted separate in camera interviews with Abby and Jed on August 12, 1997. On August 13, 1997, the court temporarily suspended the children's overnight visits with Ken. On October 6, 1997, Jean filed a motion requesting that Ken's child support obligation be increased.
The matter proceeded to a hearing before a magistrate. On January 14, 1998, the magistrate filed a decision recommending that Jean's motions be denied and further recommended that Ken be awarded three extra days of visitation for the days missed during the summer of 1997. The magistrate further recommended that Ken refrain from any sort of corporal punishment during his visits. Jean objected to the magistrate's decision. The trial court, by written opinion, affirmed the decision of the magistrate and denied Jean's motions. Jean now takes this appeal.
Jean raises three assignments of error:
 I.
Jean's first assignment of error states:
 The Order Affirming the Magistrate's Decision, overruling the Motion for Restricted Visitation, and not following the recommendation of the Court appointed psychologist, is an abuse of discretion and against the manifest weight of the evidence and not in the best interest of the children.
Jean contends the trial court erred when it denied her motion for restricted visitation because a psychologist testified that Ken's visitation should have been suspended.
A trial court's decision regarding visitation and companionship will not be reversed absent an abuse of discretion.Booth v. Booth (1989), 44 Ohio St.3d 142, 144, 541 N.E.2d 1028,1030. An abuse of discretion implies the trial court's attitude was unreasonable, arbitrary or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 450 N.E.2d 1140. Here, Jean's assignment of error alleges not only the trial court abused its discretion, but that its judgment was against the manifest weight of the evidence. A judgment supported by some competent, credible evidence, will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction Co.
(1978), 54 Ohio St.2d 279, 376 N.E.2d 578; Johnson v. Johnson
(1991), 71 Ohio App.3d 713, 595 N.E.2d 388. Further, a trial court's decision may differ from the ultimate recommendation of a psychologist if supported by evidence in the record. Frost v.Frost (1992), 84 Ohio App.3d 699, 709, 618 N.E.2d 198.
Here, Jean and Ken, during a prior proceeding, had agreed "to seek psychological counselling with regard to interfamily dynamics and visitation problems that have incurred (sic) herein." (J.E. 3-2-95). From 1995 to 1997 the Cupp's were counselled from time to time by, Dr. Thomas Hustak, the psychologist designated in their agreed entry. However, in early 1997, Ken's therapeutic relationship with Dr. Hustak became strained. While Jean and the children continued to be occasionally counselled by Dr. Hustak in 1997, Ken resumed individual counselling with another psychologist, Dr. Jerry Zimmerman. At the hearing herein, Dr. Hustak testified that, in his opinion, it would be in the best interests of the children if Ken's visitation were suspended until Ken received further counselling. Though Dr. Hustak admitted there was no evidence Ken physically abused his children, the doctor stated that Ken's behavior with his children was detrimental to their psychological well being.
For instance, Dr. Hustak felt the manner Ken physically disciplined Jed was improper. Apparently, Ken would flick Jed on the ear or head with two fingers as a form of discipline. In addition, Dr. Hustak was concerned with Ken's treatment of farm animals in the presence of Abby and Jed. For instance, during one weekend visit while Ken was burning brush on his farm, a piglet was accidentally burned. The animal, alive but severely injured, was immediately grabbed by Ken, swung against a fence post and killed. Ken explained it was necessary to take this immediate action to end the animal's misery. Though, Abby and Jed were present during this incident, Ken felt it was not improper for the children to have viewed the incident because it was a reality of farming. Ken stated further that the incident taught the children that fire was dangerous.
Dr. Zimmerman, who did not counsel Jean or the children, testified that in his opinion, Ken's flicking of Jed was a form of discipline and not physical abuse. Dr. Zimmerman characterized other contact between Jed and Ken as mere horseplay or roughhousing.
Ken testified that Jed was beginning to open up to him during the summer of 1997 and Ken felt that his relationship with both children was improving. Ken cited instances where both children were showing him more affection than they ever had. Ken also introduced fifty-three photographs taken of the children during 1997. Ken claimed the photographs depicted the children having fun during visits with their father. Jean was asked to view these photos during the hearing and she admitted her children appeared to be enjoying the visits with their father. Ken stated the children play and do chores while visiting him on his farm. Finally, Ken testified that the children act differently when in the presence of both he and Jean. Ken stated the children become withdrawn and do not exhibit the same affection for him as they do when outside of Jean's presence.
Jean testified that Abby and Jed are apprehensive about visiting Ken. Jean stated that Abby had vomited on a few Friday's preceding weekend visits with Ken. Jean admitted that the children's problems with their father will not be resolved if all contact is precluded. Jean maintained, however, that she feels it is in the children's best interest to have Ken's visitation suspended.
As stated in R.C. § 3109.05.1(A) with respect to companionship or visitation rights,
 * * * Whenever possible, the order or decree permitting the visitation shall ensure the opportunity for both parents to have frequent and continuing contact with the child[ren], unless frequent and continuing contact by either parent with the child[ren] would not be in the best interest of the child[ren].
The statute further directs a court to consider the factors as set forth in R.C. § 3109.05.1(D) when determining matters regarding a parent's right to companionship or visitation.
Here, the court specifically addressed all fourteen factors listed in division (D) of this section in its order affirming the decision of the magistrate. The first factor addressed was the "* * * prior interaction and interrelationships of the child with the child's parents * * *." R.C. § 3109.05.1(D)(1). While the court noted that Ken's form of discipline and ability to control his anger was a problem, the court also noted that there was evidence that Jean's overprotective nature contributed to the children's difficulties with visiting Ken.
The statute also requires the court to consider the "health and safety of the child" and the "mental and physical health of all parties." R.C. § 3109.05.1(D)(7) and (9). Here, the court noted that there was no evidence of physical abuse. This finding is supported by the record. The court did recognize that the children appear to have suffered emotional distress with respect to Ken's method of discipline. However, in its entry denying Jean's motion for restricted visitation, the court ordered each parent to refrain "from using any sort of corporal punishment." Specifically, the parents were ordered to refrain from "flicking or touching the children's head in any fashion as a form of punishment." In addition, Ken was warned that if he "continues to use corporal punishment visitation may be restricted in the future."
The trial court's judgment denying Jean's motion for restricted visitation is supported by competent, credible evidence and is not against the manifest weight of the evidence. C.E.Morris Co., 54 Ohio St.2d 279, 376 N.E.2d 578. Further, the statutory criteria required to be considered on matters of companionship or visitation were considered and the court's judgment based thereon was not an abuse of its discretion.Blakemore, 5 Ohio St.3d 217, 450 N.E.2d 1140.
Jeans first assignment of error is overruled.
 II.
Jean's second assignment of error states:
 The Court's decision not to talk to the children at the times of the hearing herein, was an abuse of discretion as evidence of the children's best interest certainly should include consideration of the children's statements as related to the Court, pursuant to an In Camera discussion.
An in camera interview between the children and the magistrate was conducted on August 12, 1997. The hearing on this matter was held several months later in late November. Jean contends the trial court abused its discretion when it refused to grant a second in camera interview at the time of the hearing.
The record, however, does not support Jean's assignment of error. There is no indication in the record that Jean requested a second in camera interview. In fact, upon a review of the record, it appears that Jean did not desire a second in camera interview. For instance, at the outset of the hearing, Jean's counsel argued that Dr. Hustak should be permitted to testify as to what the children told him, to prevent "the children to be again put through the ordeal of having to talk about the instances of verbal and physical abuse." (Transcript p. 10).
Attached to her brief on appeal, Jean's counsel attached an affidavit stating that she asked the court for a second in camera
interview and this request was denied. This affidavit, however, is not part of the trial record for this appeal. App. R. 9(A). Further, the time to supplement the record with material indicating what actually transpired before the trial court has passed. App. R. 9(C). An appellant must demonstrate, by reference to the record, the error upon which the assignment of error is based. App. R. 12(A)(2). Because Jean has not done so here, her second assignment is without merit and is overruled.
 III.
Jean's third assignment of error states:
 The Order Affirming the Magistrate's Decision, denying a modification of child support, is clearly contrary to statute and case law and is an abuse of discretion and against the manifest weight of the evidence.
Where child support modification is sought, "the court shall
recalculate the amount of support that would be required to be paid under the support order in accordance with the schedule andpursuant to the applicable worksheet." R.C. § 3113.215(B)(4) (emphasis added). Compliance with this section is mandatory.Marker v. Grimm (1992), 65 Ohio St.3d 139, 601 N.E.2d 496.
 A child support computation worksheet, required to be used by a trial court in calculating the amount of an obligor's child support obligation in accordance with R.C. 3113.215, must actually be completed and made a part of the trial court's record.
 The terms of R.C. 3113.215 are mandatory in nature and must be followed literally and technically in all material respects.
 Id. (syllabus, paras. one, two).
Here, the court concluded that modification of Ken's child support was not necessary "pursuant to the attached worksheet herein." (J.E. 7-30-98, p. 4). However, there is no worksheet attached to that final judgment entry. A child support worksheet is attached to the decision of the magistrate filed on January 14, 1998. However, that worksheet is not complete. Under "Column 1," line "1a" of the worksheet no amount is listed for the father's "annual gross income." The only income figure disclosed for Ken on the worksheet is $10,712. This figure roughly equals Ken's "net farm profit or (loss)" as stated on Schedule F of Ken's 1996 federal income tax form 1040, entitled "Profit or Loss From Farming." The court apparently used this figure as evidence of Ken's total "adjusted annual gross income" for purposes of computing his child support obligation.
Jean contends the trial court erred by permitting Ken to reduce his annual gross income by taking depreciation expenses not allowed by the Revised Code. However, line 12 of the worksheet discloses no deductions taken for depreciation expenses or any other ordinary and necessary business expenses allowed by the Revised Code. Therefore, it is not clear what depreciation expenses were recognized by the trial court.
Ken's gross income from farming for 1996 was $130,501. This amount must be recognized on the child support worksheet when determining Ken's "adjusted annual gross income" for child support computation purposes. Further, if this figure is to be reduced by deducting ordinary and necessary business expenses, then such reduction must be stated on the child support worksheet. Marker,65 Ohio St.3d 139, 601 N.E.2d 496. Because the trial court failed to complete the child support worksheet in full, as required by R.C. § 3113.215(B)(4), we are unable to determine whether the court erred when making its calculation with respect to depreciation expenses. Accordingly, this case must be remanded with instructions that the child support worksheet be completed in full. Marker, supra.
Jean's third assignment of error is sustained.
Judgment affirmed in part and reversed in part, cause remanded.
Judgment affirmed in part, reversed in part and cause remanded.
SHAW, P.J., and HADLEY, J., concur.