Appellant Ludmila Kurincic nka Ludmila Matia (Matia) appeals a decision by the trial court finding her in contempt for failure to obey a court visitation order. Matia assigns the following error for our review:
 THE TRIAL COURT ERRED IN ITS DECISION THAT APPELLANT'S ACTIONS CONSTITUTED A WILLFUL VIOLATION OF A PREVIOUS COURT ORDER.
Having reviewed the record and the legal arguments of the parties, we affirm the decision of the trial court. The apposite facts follow.
Matia and Kurincic were divorced on October 1, 1996. On October 27, 1998, the trial court issued an order specifying that Kurincic was to have overnight visitation with the parties' minor child, Arcadia, every other weekend from 5:00 p.m. Friday to 8:00 a.m. Monday morning, starting in November 1998. However, on November 6, 1998, Matia refused to allow Kurincic to visit with Arcadia. On November 19, 1998, Kurincic filed a Motion to Show Cause alleging that Matia should be held in contempt for violating the court's visitation order.
On January 12, 1999, after a hearing, the trial court found Matia to be in contempt of its visitation order. Matia was assessed a fine of $50.00 and sentenced to ten days in jail. The court also provided that Matia could purge her contempt by "allowing defendant Alojz Kurincic an additional weekend of possession time with Arcadia prior to February 1, 1999" and by "presenting a receipt for one weekend possession period from defendant Alojz Kurincic and forwarding the same to this Court on or before February 1, 1999."
On March 11, 1999, Kurincic filed a Motion to Impose Sentence requesting the trial court to impose its contempt sentence upon Matia for failing to purge her contempt as provided in the court's January 12, 1999 journal entry. In an affidavit attached to the motion, Kurincic averred that Matia failed to provide him with a make up weekend visitation in January 1999. A hearing on the motion was scheduled for April 9, 1999. The hearing was later continued until May 4, 1999.
At the May 4, 1999 hearing, Matia testified that on January 22, 1999, Kurincic came to her house at approximately 5:15 p.m. saying he was supposed to have visitation with Arcadia that day. Matia stated that, after she told Kurincic she was not aware that he was to have visitation, he told her he was going to the police. Later, Matia received a fax from the Brecksville police department informing her that Kurincic was to have visitation that day. She called the police department and made arrangements through the police department to drop Arcadia off at Kurincic's house within the hour.
When Matia arrived at Kurincic's house, he was not home. She dropped Arcadia at the home of Kurincic's neighbor. She then called the police station at about 7:40 p.m. and told Kurincic that Arcadia was at the neighbor's house.
According to Matia, Kurincic refused to take Arcadia for the weekend, saying that he wanted the full weekend. Matia told Kurincic that he could keep Arcadia for her two extra hours on Monday, but he still refused to take her. Thereafter, Matia went to pick Arcadia up at about 8:00 p.m.
On cross examination, Matia admitted that she refused to turn Arcadia over to Kurincic at 5:00 p.m. Friday, that she did not have a receipt indicating that Kurincic had an additional possession period from 5:00 p.m. Friday to 8:00 a.m. Monday, and that she did not offer Kurincic a receipt to sign. Matia's husband, Tom, testified and gave a substantially similar version of the incident.
Alex Kurincic testified that he arrived at Matia's home at 5:00 p.m. and stated that he was to have visitation with Arcadia. When the Matias refused to allow him to take Arcadia, he went to the Brecksville police station and showed the officers a copy of the court order. After contacting Matia, the Brecksville police informed Kurincic that Arcadia would be at his home within the hour. Kurincic got home within approximately forty-five minutes but Arcadia was not there. Kurincic phoned the Matias' house and spoke to Tom Matia who told him that Arcadia was at the neighbor's house. Kurincic asked him why they did not wait for him. Tom Matia replied that he did not have to wait and told Kurincic to get Arcadia from the neighbor's house.
According to Kurincic, he had very little contact with the neighbors and Arcadia had never met them before. When he arrived to pick up Arcadia around 7:00 p.m., Arcadia was very upset. She was screaming and crying. She also told Kurincic she hated him, that he was not her father, and that Tom Matia was her father. Kurincic testified that he called Tom Matia and asked him to come take Arcadia home, but he refused. Kurincic then called the Brecksville police and told them Arcadia was upset and screaming. After the police called Tom Matia and told him to pick Arcadia up, he agreed to do so.
Kurincic testified that he brought a visitation receipt with him when he went to Matia's house at 5:00 p.m. He said he showed it to Tom Matia, and told him that Matia would go to jail if she didn't present the receipt to the court, but Tom Matia laughed at him and said that Matia would never go to jail.
The trial court found Matia in contempt.
 It's obvious that pursuant to that order when Mr. Kurincic appeared to pick up the child at five o'clock, there was a refusal. The Court has no alternative but to impose the sentence that was ordered prior to today's hearing. The Court orders Mrs. Matia to pay the $250 fine, and the ten days jail sentence for willful violation of the court order be and is hereby imposed. It will be effectuated immediately.
(Tr. 67-68.)
Matia was released from custody on personal bond, pending appeal. This appeal followed.
In her sole assignment of error, Matia argues the trial court's decision was against the manifest weight of the evidence. Specifically, she argues the court erred in finding that she willfully violated its prior order. It is true that, in announcing its decision at the hearing, the trial court stated that it was imposing sentence upon Matia for willful violation of the court order. (Tr. 68.) However, a trial court speaks only through its journal entry, not by oral pronouncements. Mihovk v. Paulson (Sept. 19, 1996), Cuyahoga App. No. 69987, unreported, citing Schenley v. Kauth (1953), 160 Ohio St. 109, 113 N.E.2d 625, at paragraph one of the syllabus. In this case, the trial court's journal entry states only that Matia was found to be subject to the prior order of the court.
The law is clear that a violation of a court order need not be willful to constitute civil contempt. See Pugh v. Pugh (1984),15 Ohio St.3d 136, 140, 472 N.E.2d 1085, 1088. (Proof of purposeful, willing, or intentional violation of a trial court's prior order is not required in civil contempt.) See, also, Johnson v. Johnson
(1991), 71 Ohio App.3d 713, 717, 595 N.E.2d 388, 391. In Johnson,
as in this case, the trial court found that the appellant "willfully" violated a prior court order. The court of appeals found that the trial court's use of the term "willful" did not dictate that intention or willfulness must be shown. Citing Pugh,
the Johnson court found that [t]he absence of willfulness does not relieve from civil contempt. Civil as distinguished from criminal contempt is a sanction to enforce compliance with an order of the court or to compensate for losses or damages sustained by reason of noncompliance. Johnson, 71 Ohio App.3d at 717, 595 N.E.2d at 391, citing Pugh, 15 Ohio St.3d at 140, 472 N.E.2d at 1089. See, also,Watson v. Wolsonovich (1996), 112 Ohio App.3d 565, 569,679 N.E.2d 350, 352. (Since the purpose of sanctions in a case of civil contempt is to compel the contemnor to comply with lawful orders of a court, the fact that the contemnor acted innocently and not in intentional disregard of a court order is not a defense to a charge of civil contempt.)
[C]ivil contempt is defined as that which exists in failing to do something ordered to be done by the courts in a civil action for the benefit of the opposing party therein. Ganelli v.Ganelli (June 11, 1998), Cuyahoga App. No. 72757, unreported, citing Beach v. Beach (1955), 99 Ohio App. 428, 431,134 N.E.2d 162, 165; Pedone v. Pedone (1983),11 Ohio App.3d 164, 463 N.E.2d 656, at paragraph one of the syllabus. Furthermore, a sanction for civil contempt must provide the contemnor an opportunity to purge herself of the contempt.Carroll v. Detty (1996), 113 Ohio App.3d 708, 711-712,681 N.E.2d 1383, 1385, citing In re Purola (1991),73 Ohio App.3d 306, 312, 596 N.E.2d 1140, 1144, appeal dismissed (1992), 63 Ohio St.3d 1428, 588 N.E.2d 129; Fry v.Fry (1989), 64 Ohio App.3d 519, 523, 582 N.E.2d 11, 14;Tucker v. Tucker (1983), 10 Ohio App.3d 251, 461 N.E.2d 1337, at paragraph three of the syllabus.
In this case, the trial court's order was clearly one of civil contempt. The contempt order was imposed for Matia's failure to provide Kurincic with an additional weekend visit with Arcadia prior to February 1, 1999 as set forth in the trial court's order of January 12, 1999. The court's order provided as follows:
 The Court finds Plaintiff Ludmila Matia is in contempt of Court for failing to comply with this Court's Orders regarding possession of the parties['] minor child, Arcadia. The Court finds that a fine of $250.00 shall be imposed upon Ludmila Matia. The Court further finds that Plaintiff Ludmila Matia is sentenced to 10 days in jail.
(Journal entry of Jan. 12, 1999.)
Because it was imposed for violation of a prior court order, and because it included an opportunity for purging the contempt, we conclude the trial court's contempt order was one of civil contempt.
Accordingly, our review of this case is guided by a clear and convincing evidence standard. When reviewing a civil contempt finding, an appellate court must determine whether the court below had competent and credible evidence before it to support its finding of contempt by clear and convincing evidence. Ganelli, citing ConTex, Inc. v. Consolidated Technologies, Inc. (1988),40 Ohio App.3d 94, 95, 531 N.E.2d 1353, 1355.
Contempt is a disregard of, or disobedience to, an order or command of judicial authority. Carroll v. Detty (1996),113 Ohio App.3d 708, 711, 681 N.E.2d 1383, 1384. In this case, Matia admitted that she did not provide Kurincic with an additional weekend of possession time with Arcadia, nor did she obtain a receipt from Kurincic indicating he received such an additional period of visitation. In its January 12, 1999 journal entry, the court found that Defendant Alozj Kurincic attempted to obtain possession of Arcadia Kurincic on November 6, 1998, to no avail. Plaintiff Ludmilla Matia refused to comply with the terms of the agreement, and stated that she would not allow Defendant Alozj Kurincic possession of the child. (Journal entry of Jan. 12, 1999.)
Matia argues that the trial court improperly failed to consider that she attempted to comply with the court's order by taking Arcadia to Kurincic's neighbor's house. However, the court's order was very specific and called for Matia to produce a receipt indicating that Kurincic had an additional possession period from a Friday at 5:00 p.m. to Monday morning at 8:00 a.m. Matia admitted that Kurincic arrived at her home to pick up Arcadia at 5:00 p.m. on Friday, Jan. 22, 1999, but Arcadia was not ready to leave. Matia further admitted that she refused to allow Arcadia to leave with Kurincic at that time. Matia maintained that she eventually took Arcadia to Kurincic's neighbor's house after 7:00 p.m., more than two hours after the required 5:00 p.m. time.
We are mindful of Matia's testimony that she delivered Arcadia to Kurincic's neighbor's house sometime after 7:00 p.m. and that Kurincic refused to take her. However, Kurincic testified that he opted not to take Arcadia for the weekend because she was crying, angry and upset. He testified that he called the Matias to pick Arcadia up because he didn't want to cause her any additional harm. Matia admitted that she failed to obtain a receipt from Kurincic indicating that he received an additional weekend of possession. When asked if she offered him a receipt to sign, she replied Why would I offer him a receipt? (Tr. 23.) When asked if she prepared a receipt for Kurincic to sign, she replied No. I was not told to do so. (Tr. 23.) This evidence illustrates that Matia did not substantially comply with the trial court's order. Even if she had substantially complied with the order, such compliance would not preclude a finding of contempt. Rose v. Rose (Mar. 31, 1997), Franklin App. Nos. 96APF09-1150, 96APF11-1550, unreported, citing State ex rel. Celebrezze v. Gibbs (1991),60 Ohio St.3d 69, 75, 573 N.E.2d 62, 68, rehearing denied (1991)61 Ohio St.3d 1414, 574 N.E.2d 1077.
We also reject Matia's argument that a contempt finding was precluded because Kurincic failed to prove that Matia was actually served with a copy of the trial court's order finding her in contempt and setting forth the purge conditions. In Quisenberry v. Quisenberry (1993), 91 Ohio App.3d 341, 346, 632 N.E.2d 916, 919, the court held that because a motion for contempt is a written motion as contemplated by Civ.R. 5, process may be served in accordance with the methods permitted by that rule, i.e., by delivery, facsimile transmission, or ordinary mail service to the party or attorney representing that party. The trial court's docket indicates that notice was issued to Matia of its October 27, 1998 order. The show cause motion was sent to Matia by certified mail and a signed receipt was returned to the court and noted on the case docket. Furthermore, the docket also indicates that notice of the Jan. 12, 1999 contempt finding was issued.
Although it is not conclusive, a notice issued notation in the case docket has been held to constitute evidence of service. See Defini v. City of Broadview Hts. (1991), 76 Ohio App.3d 209,213, 601 N.E.2d 199, 201. Where the Civil Rules on service are followed, service is deemed proper unless rebutted by sufficient evidence. In re Estate of Popp (Apr. 18, 1994), 94 Ohio App.3d 640,650, 641 N.E.2d 739, 745, certiorari denied (1995),513 U.S. 1192, 131 L.Ed.2d 136, 115 S.Ct. 1256. The presumption of proper service has been held to be rebuttable by an affidavit attesting that service was not received. United Home Fed. v. Rhonehouse (1991), 76 Ohio App.3d 115, 125, 601 N.E.2d 138, 144, citing Nationwide Ins. Co. v. Mahn (1987), 36 Ohio App.3d 251,522 N.E.2d 1096. However, Matia failed to submit an affidavit averring that she did not receive service of the contempt order. Therefore, we must presume that service was proper. Matia's assignment of error is overruled.
Judgment Affirmed.
It is ordered that appellee recover of appellant his costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Domestic Relations Division of Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
SPELLACY, P.J. and KILBANE, J., CONCUR.
 ____________________________ PATRICIA ANN BLACKMON, JUDGE