[Cite as *In re E.A.*, 2022-Ohio-2625.]

# IN THE COURT OF APPEALS OF OHIO
# THIRD APPELLATE DISTRICT
# CRAWFORD COUNTY

IN RE:

   E.A.,

                                             CASE NO.  3-21-21

DEPENDENT CHILD.

                                             **O P I N I O N**

[SCOTT A. - APPELLANT]

---

### Appeal from Crawford County Common Pleas Court
### Juvenile Division
### Trial Court No.  C2215051

### Judgment Affirmed

### Date of Decision:  August 1, 2022

---

**APPEARANCES:**

   *Adam Charles Stone* **for Appellant, Scott A.**

   *Michael J. Wiener* **for Appellee, Crawford Co. JFS**

   *Kristin E. Brown* **for Appellee, Venessa A.**

Case No. 3-21-21

**MILLER, J.**

{¶1} Contemnor-appellant, Scott A., appeals the November 23, 2021 judgment of the Crawford County Court of Common Pleas, Juvenile Division, sentencing him for contempt of court. For the reasons that follow, we affirm.

## I. Facts & Procedural History

{¶2} On April 19, 2021, a complaint was filed in the trial court alleging that Scott's then seven-year-old son, E.A., was a dependent child. Both Scott and E.A.'s mother, Venessa A., were named in the complaint. Scott and Venessa entered admissions to the allegations of the complaint, and on May 18, 2021, E.A. was adjudicated a dependent child. On May 25, 2021, the trial court awarded temporary custody of E.A. to E.A.'s maternal grandmother. On June 9, 2021, the trial court adopted a case plan under which Scott was required, among other things, to "not use any illicit substances or non-prescribed medications," "submit to random drug/alcohol screens as requested," and "sign any needed releases of information" for certain service providers.

{¶3} On August 26, 2021, the Crawford County Department of Job and Family Services ("CCJFS"), through the Crawford County Prosecuting Attorney's Office, filed a motion for Scott to show cause why he should not be held in contempt of court for failing to comply with the terms of his case plan. Specifically, the motion alleged that Scott had "tested positive for illicit substances on June 22, 2021,

-2-

and June 29, 2021," "refused to cooperate with [CCJFS] and its caseworkers," and "repeatedly refused to comply with requests for further drug/alcohol screens." The trial court set a hearing on CCJFS's motion for September 22, 2021. On September 5, 2021, Scott was personally served with the summons to appear on the contempt motion and notified of the September 22, 2021 hearing.

{¶4} On September 10, 2021, Scott filed a motion to continue the September 22, 2021 contempt hearing. In his motion, Scott indicated that he was "moving out of state and w[ould] not be available." (Underlining sic.) (Doc. No. 58). On September 16, 2021, the trial court denied Scott's motion, finding that Scott's "plans to move are optional to him and thus do not justify continuing the matter at a later date and inconveniencing all the other parties." (Doc. No. 61).

{¶5} Scott failed to appear at the September 22, 2021 hearing. However, shortly before the hearing was set to start, the trial court received a facsimile transmission from Scott informing the trial court that he would not be in attendance. (Doc. No. 66). Scott assured the trial court that a "medical Dr. clear[ed] [his] excusal." Attached to Scott's message was documentation purporting to show that Scott had been admitted to the hospital for back pain and that he had been directed to follow-up with an orthopedic surgeon in Michigan. Although the trial court acknowledged its receipt of Scott's message, it nevertheless proceeded to conduct the hearing, noting that Scott's message "did not contain a request for a continuance

-3-

or a clear indication as to what the attached documentation purported to relay to the Court nor the origin of same." (Doc. No. 68). The trial court indicated that it could not interpret Scott's message "as a continuance request [or a] justification for not appearing." (Doc. No. 68).

{¶6} After receiving evidence, the trial court found Scott in contempt. In its September 24, 2021 judgment entry, the trial court found that Scott "was willfully in contempt for failing to comply with the terms and conditions of the Case Plan previously filed herein, for testing positive for illicit substances, for refusing to sign *all* requested releases of information, and for refusing to fully cooperate with CCJFS." (Emphasis sic.) (Doc. No. 68). Because Scott was not present at the hearing, the trial court continued sentencing until he could be brought before the court. The trial court found Scott's failure to appear at the hearing to be an additional contemptuous action, stating in its entry, "However the defendant is also found in contempt for failing to appear on summons and thus a warrant for the arrest of Scott [A.] shall be issued." (Doc. No. 68). The trial court ordered that, upon arrest, Scott be held without bond pending further hearing. (Doc. Nos. 68, 69).

{¶7} On November 3, 2021, Scott was located and taken into custody. A hearing before the trial court was scheduled for the following Monday, November 8, 2021. As reflected in the trial court's November 23, 2021 judgment entry, the trial court entered the following orders at the November 8, 2021 hearing:

-4-

Case No. 3-21-21

It is therefore **ORDERED, ADJUDGED, AND DECREED** that:

* * *

3)     The defendant, Scott A[.], is fined the sum of $250.00 and is sentenced to thirty (30) days county jail;

4)     That Two Hundred Fifty Dollars ($250.00) of the fine and fifteen (15) days county jail are suspended on the following conditions:

i.     The defendant is Ordered to sign any required Releases of Information for [CCJFS];

ii.     The defendant is Ordered to NOT rescind any executed Releases of Information;

iii.     The defendant is Ordered to fully cooperate with [CCJFS] and to comply with the case plan;

iv.     The defendant[] is Ordered to complete a Psychological Evaluation * * * and to cooperate with any recommended treatment therein;

5)     The Defendant, Scott A[.], is remanded to the custody of the Crawford County Sheriff's Office to serve fifteen (15) days of the sentence, with credit for time already served herein. The imposition of these fifteen (15) days shall be subject to review by the Court upon receipt of the complete records from the various providers[.]

(Boldface and capitalization sic.) (Doc. No. 90). Following the hearing, Scott was transported to the Crawford County Jail to serve the unsuspended portion of his jail sentence.

{¶8} On November 12, 2021, Scott filed a motion requesting that he be released from the Crawford County Jail. In the motion, Scott's attorney represented that Scott "executed HIPAA waivers at the [November 8, 2021] hearing" and that

-5-

the necessary documentation was requested "from the providers the day of [Scott's] sentencing." (Doc. No. 85). Scott's attorney certified that "[a]s of 2:30 p.m. * * *, November 12, 2021, * * * both providers have responded to that request for medical information." (Doc. No. 85). Accordingly, he asked that Scott be immediately released from the Crawford County Jail and that the balance of his jail sentence be suspended. (Doc. No. 85). However, later that day, the trial court denied Scott's motion. (Doc. No. 86). Although it is unclear from the record when Scott was released from the Crawford County Jail, Scott asserts he served the entirety of the unsuspended portion of his jail sentence. (Appellant's Brief at 11). CCJFS does not dispute this claim.

## II. Assignment of Error

{¶9} On November 29, 2021, Scott timely filed a notice of appeal.[1] He raises the following assignment of error for our review:

> **The trial court violated the appellant's Fifth and Sixth [Amendment] Rights to the United States Constitution, made applicable to the States through the Fourteenth Amendment, by proceeding on a criminal contempt allegation and making a finding that appellant was in contempt without appellant being present for such proceedings.**

---

[1] Although not cited or sanctioned for contempt, Venessa filed an appellate brief in this matter, wherein she endorsed Scott's appellate brief but made no additional arguments.

### III. Discussion

{¶10} In his assignment of error, Scott argues that the trial court violated his right to due process and his right to confront the witnesses against him. Scott maintains the trial court finding him in contempt for failing to comply with the terms of the case plan was a criminal contempt and the trial court therefore violated his constitutional rights at the September 22, 2021 hearing by finding him in contempt of court in absentia.

### A. Civil Contempt vs. Criminal Contempt

{¶11} "The Supreme Court of Ohio has defined 'contempt of court' as the disobedience of a court's order." *State v. Orta*, 3d Dist. Seneca No. 13-20-05, 2020-Ohio-4514, ¶ 22, citing *Denovchek v. Bd. of Trumbull Cty. Commrs.*, 36 Ohio St.3d 14, 15 (1988). Contempt is "'conduct which brings the administration of justice into disrespect, or which tends to embarrass, impede or obstruct a court in the performance of its functions.'" *Denovchek* at 15, quoting *Windham Bank v. Tomaszczyk*, 27 Ohio St.2d 55 (1971), paragraph one of the syllabus. "The court's power to punish contumacious conduct is both inherent and statutory." *Orta* at ¶ 22, citing *Denovchek* at 15 and R.C. 2705.01 and 2705.02.

{¶12} "'Proceedings in contempt are sui generis in the law. They bear some resemblance to suits in equity, to criminal proceedings and to ordinary civil actions; but they are none of these.'" *Wilson v. Jones*, 3d Dist. Seneca No. 13-13-06, 2013-

Ohio-4368, ¶ 25, quoting *Cincinnati v. Cincinnati Dist. Council 51*, 35 Ohio St.2d 197, 201-202 (1973). Despite their singularity, contempts are generally categorized either as civil contempt or as criminal contempt. "Although the distinction between civil and criminal contempt is often murky, it is important." *Liming v. Damos*, 133 Ohio St.3d 509, 2012-Ohio-4783, ¶ 11. If the contempt is a civil contempt, the standard of proof is clear and convincing evidence, and the alleged contemnor is entitled only to the rights afforded a litigant in a civil action. *Cleveland v. Bright*, 8th Dist. Cuyahoga No. 108989, 2020-Ohio-5180, ¶ 24. An alleged civil contemnor must receive notice of the charged contempt and have an opportunity to be heard, but "the alleged contemnor can be tried and sanctioned in absentia." *Id.* In contrast, where the contempt is a criminal contempt, the alleged contemnor is "afforded many of the same constitutional safeguards that a defendant in a criminal trial enjoys." *Liming* at ¶ 11. These include the right to notice of the charges, the right to defend oneself and be heard, the right to counsel, and the right that there be proof beyond a reasonable doubt to support a conviction. *Internatl. Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 826, 114 S.Ct. 2552 (1994). Furthermore, an alleged criminal contemnor "who has not waived his right to be present may not be tried and sentenced in absentia." *Adams v. Epperly*, 27 Ohio App.3d 51 (9th Dist.1985), syllabus.

{¶13} "Because all contempt involves some type of sanction or punishment, the distinction between civil and criminal contempt is usually based on the purpose to be served by the sanction." *Liming* at ¶ 12. "[I]n determining whether a contempt is civil or criminal, the pertinent test is 'what does the court primarily seek to accomplish by imposing sentence?'" *State ex rel. Corn v. Russo*, 90 Ohio St.3d 551, 554-555 (2001), quoting *Shillitani v. United States*, 384 U.S. 364, 370, 86 S.Ct. 1531 (1966).

{¶14} In civil contempts, the sanctions are designed to be "remedial or coercive and for the benefit of the complainant." *Brown v. Executive 200, Inc.*, 64 Ohio St.2d 250, 253 (1980). Accordingly, civil contempt is marked by conditional fines or terms of incarceration. *See id.* "A sanction for civil contempt * * * must allow the contemnor to purge himself of the contempt. Once the contemnor complies with the court's order, the purpose of the contempt sanction has been achieved and the sanction is discontinued." (Citations omitted.) *In re Purola*, 73 Ohio App.3d 306, 312 (3d Dist.1991). The civil contemnor "is said to carry the keys of his prison in his own pocket since he will be freed if he agrees to do as ordered." (Internal citation omitted.) *Brown* at 253.

{¶15} Criminal contempt, on the other hand, is typically characterized by unconditional fines or terms of incarceration. *Liming*, 133 Ohio St.3d 509, 2012-Ohio-4783, at ¶ 12; *but see State v. Kilbane*, 61 Ohio St.2d 201, 206-207 (1980)

(rejecting an "approach that labels any conditional contempt as civil" and allowing a "conditional criminal contempt sanction"). A sanction for criminal contempt "operates not as a remedy coercive in its nature but as punishment for the completed act of disobedience, and to vindicate the authority of the law and the court." *Brown* at 254. Because criminal contempt serves a punitive purpose, "there is no requirement that the person charged be permitted to purge himself or herself of the contempt." *Cleveland v. Robinson*, 8th Dist. Cuyahoga No. 109273, 2020-Ohio-1030, ¶ 12.

**B. The trial court did not violate Scott's constitutional rights by proceeding in his absence to find him in contempt of court.**

{¶16} It is undisputed that Scott had notice of the original contempt charge and of the September 22, 2021 hearing. It is also undisputed that Scott did not attend the September 22, 2021 hearing or waive his right to be present. Thus, whether the trial court erred at the September 22, 2021 hearing by finding Scott in contempt in absentia depends on whether the contempt was civil or criminal.

{¶17} To determine whether the contempt was civil or criminal, we must ascertain what the trial court aimed to accomplish by sanctioning Scott. "In order to determine the purpose of the contempt sanction, an appellate court must consider the entire record." *Rich v. Rich*, 11th Dist. Trumbull No. 2012-T-0089, 2013-Ohio-2840, ¶ 14, citing *Kilbane* at 206. We note that our review is complicated because Scott failed to file transcripts from the hearings held on September 22, 2021 and

November 8, 2021. Nevertheless, it is possible to determine the nature of the contempt in this case by examining the trial court's journal entries. *See id.* (in the absence of a transcript of the contempt hearing, the reviewing court relied on the motion for contempt and the trial court's journalized findings to characterize the contempt as civil).

**{¶18}** We first look to the trial court's September 24, 2021 judgment entry. In this entry, the trial court recorded its findings that Scott was "willfully in contempt" and that he was in contempt for the "willful noncompliance with [the] court's previous orders." The trial court's description of Scott's noncompliance as "willful" could be read as an indication that the trial court was treating the contempt as criminal because, "[i]n cases of criminal, indirect contempt, it must be shown that the alleged contemnor intended to defy the court."[2] *Midland Steel Prods. Co. v. U.A.W. Local 486*, 61 Ohio St.3d 121 (1991), paragraph two of the syllabus. However, contempt may still be categorized as civil even when the trial court finds that the contemnor "willfully" disobeyed the court's previous orders. *See Johnson v. Johnson*, 71 Ohio App.3d 713, 717-718 (11th Dist.1991). Thus, the trial court's

---

[2] "Courts distinguish not only between civil and criminal contempt, but also between indirect and direct contempt." *Orta*, 2020-Ohio-4514, at ¶ 21. "Indirect contempt occurs outside the presence of the court." *Id.* "Direct contempt occurs in the presence of the court and has been defined to include 'conduct which brings the administration of justice into disrespect, or which tends to embarrass, impede or obstruct a court in the performance of its functions.'" *Id.*, quoting *Denovchek*, 36 Ohio St.3d at 15.

characterization of Scott's noncompliance as "willful" sheds little light on what the court sought to accomplish by sanctioning Scott.

{¶19} Likewise, the fact that the September 24, 2021 judgment entry contained an order that a warrant be issued for Scott's arrest is not conclusive of the trial court's purpose in sanctioning Scott for contempt. Scott argues that the trial court's issuance of an arrest warrant without bond is evidence of its intention to punish him, rendering the contempt criminal. But "the power to issue arrest warrants in contempt cases is a 'necessary corollary' of the contempt power." *Burt v. Dodge*, 65 Ohio St.3d 34, 35 (1992). With respect to contempt charges filed pursuant to R.C. 2705.02, as the charges in this case were, R.C. 2705.03 "specifically recognizes a court's power to 'issu[e] process to bring the accused into court[.]'" *Id.* at 36. "R.C. 2705.02 does not distinguish between civil and criminal contempt." *Zunt v. Zunt*, 9th Dist. Lorain No. 2425, 1976 WL 188881, *2 (Aug. 11, 1976); *see Cleveland v. Patterson*, 8th Dist. Cuyahoga No. 109274, 2020-Ohio-1628, ¶ 8 (noting that the contemnor had been charged with criminal contempt under R.C. 2705.02); *Barton v. Barton*, 2d Dist. Greene No. 2016-CA-12, 2017-Ohio-980, ¶ 145 (referencing "civil contempt proceedings under R.C. 2705.02"). Therefore, a contempt cannot be classified as criminal simply because an arrest warrant was issued in the case.

{¶20} Moreover, the arrest warrant in this case was issued directly in relation to Scott's failure to appear at the September 22, 2021 hearing. Scott had been ordered to appear at the September 22, 2021 hearing, and the summons specifically advised Scott that his failure to appear could result in the issuance of an arrest warrant. (Doc. No. 31). Once Scott failed to appear for the hearing, the trial court had the authority to issue an arrest warrant to enforce its order and to bring Scott before the court to answer for his contemptuous conduct. *In re J.R.R.*, 12th Dist. Butler No. CA2013-09-176, 2014-Ohio-3550, ¶ 30; R.C. 2705.02(A) and 2705.03. While we take no position on the propriety of the no-bond provision of the arrest warrant, under the circumstances—with Scott residing outside of the state of Ohio and having exhibited an unwillingness or inability to comply with the trial court's orders to appear for scheduled hearings—we are not persuaded that this provision proves the trial court's overarching purpose was to punish Scott.

{¶21} Although the trial court's September 24, 2021 judgment entry does not do much to clarify whether the contempt in this case was civil or criminal, the same cannot be said of the trial court's November 23, 2021 judgment entry. It was through the November 23, 2021 judgment entry that the trial court journalized the sanctions it imposed on Scott.

{¶22} Here, the trial court sanctioned Scott by levying a $250 fine and imposing a 30-day jail sentence. The trial court then bifurcated the overall sanction

into a suspended portion and an unsuspended portion. The trial court's division of Scott's sanction is significant. "It is well established * * * that the same act can qualify as both civil and criminal contempt, and sanctions for both can be combined in order for the court to achieve its desired result." *In re Wingrove*, 4th Dist. Washington No. 02CA4, 2003-Ohio-549, ¶ 20. As the Supreme Court of Ohio explained:

> This court has previously recognized that a contempt sanction can be both civil and criminal. In *Brown [v. Executive 200, Inc.]*, one of the contemnors was sentenced to ten days in jail, seven of which could be purged. The court of appeals had held that the contempt was criminal in nature and reversed the judgment because the trial court had used the clear-and-convincing standard. We reinstated a portion of the sentence, determining that because seven days of the ten-day sentence could be purged, that portion was civil in nature. The unconditional three days, however, were criminal, and the case was remanded to the trial court.

*Liming*, 133 Ohio St.3d 509, 2012-Ohio-4783, at ¶ 15, citing *Brown*, 64 Ohio St.2d at 253, 255. Accordingly, we must examine the suspended and unsuspended portions of Scott's sanction individually.

{¶23} In the suspended portion of Scott's sanction, the trial court suspended the entirety of Scott's $250 fine and 15 days of his 30-day jail sentence on condition that Scott (1) sign and not revoke required releases of information, (2) cooperate with CCJFS and comply with the case plan, and (3) complete a psychological evaluation and any recommended follow-up treatment. These conditions were addressed directly to the conduct that resulted in the trial court's contempt finding—

-14-

Scott's failure to sign releases of information, comply with other terms of his case plan, and cooperate with CCJFS. The conditions attached to the suspended portion of Scott's sanction were thus designed to induce Scott to comply with the terms of the case plan and to cooperate with CCJFS. Because the clear purpose of this portion of Scott's sanction was to coerce Scott's compliance, this portion is a civil penalty.

{¶24} Scott suggests that this portion of his contempt sanction cannot be considered civil because the trial court did not afford him an opportunity to purge his contempt. Insofar as Scott maintains he does not actually have the ability to purge his contempt, we find some merit in his argument. "It is well settled that a purge order must provide 'a true opportunity for purging'—it cannot simply purport to regulate future conduct." *In re M.H.*, 8th Dist. Cuyahoga No. 97618, 2012-Ohio-3371, ¶ 13, fn. 4, quoting *Tucker v. Tucker*, 10 Ohio App.3d 251, 252 (10th Dist.1983); *Frey v. Frey*, 197 Ohio App.3d 273, 2011-Ohio-6012, ¶ 35 (3d Dist.). Suspending a contempt sanction on condition that the contemnor comply with a preexisting order of the court, such as a child support order or a case plan, "simply amounts to the court's reaffirmation of its previous * * * order and can have no effect since any effort to punish a future violation of the * * * order would require new notice, hearing, and determination." *Tucker* at 252.

**{¶25}** In this case, several of the conditions of Scott's suspended sanction, including the requirement that he sign the requested releases and that he obtain a psychological evaluation, were appropriate. But this is not true of all the conditions of the suspended portion of his sanction. One of the conditions of Scott's suspended sanction required Scott to comply with the case plan and cooperate with CCJFS. However, Scott already had an obligation to comply with the case plan and cooperate with CCJFS. Thus, this condition is simply a reaffirmation of the court's earlier orders that regulates Scott's future conduct. Furthermore, the trial court did not time limit this condition. The suspended portion of Scott's sanction was not conditioned upon compliance with the case plan for any definite period of weeks or months, and there was no provision allowing for reassessment of Scott's compliance at some certain point in the future. Thus, Scott is effectively precluded from purging his contempt. No matter how faithfully Scott complies with the case plan or for how long, Scott cannot do anything to bring about the discontinuation of the suspended portion of his sanction. Until there is no longer a case plan for Scott to comply with, Scott will remain in contempt of court.

**{¶26}** Yet, in past cases, courts have treated contempts as civil notwithstanding the presence of invalid purge conditions. *See In re Contempt of Lance*, 8th Dist. Cuyahoga No. 102838, 2016-Ohio-2717, ¶ 14-19; *Rich*, 2013-Ohio-2840, at ¶ 14-20; *Tucker* at 252. While Scott lacks a "true opportunity for

purging,"[3] the suspended portion of Scott's sanction is still conditional and its coercive purpose is manifest. *Tucker* at 252. Therefore, notwithstanding the problematic conditions attached to the suspended portion of Scott's sanction, this portion of Scott's sanction retains its civil character.

{¶27} We turn now to the unsuspended portion of Scott's sanction. The trial court ordered that Scott serve 15 days of his 30-day jail sentence. Scott was credited for the days he served in the Crawford County Jail from his arrest on November 3, 2021, until he appeared before the trial court on November 8, 2021. Furthermore, the trial court indicated that upon receipt of complete patient records from Scott's various service providers, it would reconsider the imposition of these 15 days.

{¶28} The unsuspended portion of Scott's sanction is harder to define as either civil or criminal. Although this portion of Scott's sanction arguably has a coercive purpose in deterring any additional noncompliance and ensuring attendance at future court hearings, it is clearly punitive as demonstrated by the fact Scott was kept in jail despite his request for release.

{¶29} But we need not, and in fact ought not, determine definitively whether this portion of Scott's sanction was civil or criminal. Even assuming that the unsuspended portion of Scott's sanction was a criminal penalty and that, due to Scott's absence from the September 22, 2021 hearing, the trial court might have

---

[3] Scott does not challenge the validity of this condition in this appeal.

been limited in its ability to impose this portion of the sanction upon Scott, Scott's arguments relating to this portion of his contempt sanction are moot. It is undisputed that Scott served the entirety of the unsuspended portion of his 30-day jail sentence. "When a contemnor appeals a finding of criminal contempt, courts typically apply the general rule governing mootness of criminal appeals." *In re Chambers*, 1st Dist. Hamilton Nos. C-180333 and C-180334, 2019-Ohio-3596, ¶ 11. In non-felony cases "where a criminal defendant * * * voluntarily satisfies the judgment imposed upon him or her for [the] offense, an appeal from the conviction is moot unless the defendant has offered evidence from which an inference can be drawn that he or she will suffer some collateral legal disability or loss of civil rights stemming from that conviction." *State v. Golston*, 71 Ohio St.3d 224, 226-227 (1994). "The burden of proof is on the defendant to establish at least an inference that he will suffer some collateral disability or loss of civil rights." *Harris v. Omosule*, 2d Dist. Greene No. 2009 CA 78, 2010-Ohio-1124, ¶ 6.

{¶30} Here, although Scott requested on November 12, 2021, that he be released early from the Crawford County Jail, there is no indication in the record that Scott ever sought to stay execution of the unsuspended portion of his contempt sanction. *See State v. Riggs*, 9th Dist. Medina No. 17CA0011-M, 2018-Ohio-347, ¶ 8 (concluding that despite the defendant's "Motion for Halftime Release," defendant had voluntarily served his jail sentence because he failed to seek a stay of

execution of his sentence). Therefore, as it appears that Scott acquiesced to the unsuspended portion of his sanction, Scott voluntarily served this portion of his sanction. *See Cleveland Hts. v. Lewis*, 129 Ohio St.3d 389, 2011-Ohio-2673, ¶ 26. Moreover, Scott has pointed to no evidence in the record supporting an inference that he will suffer some collateral disability or loss of civil rights attributable to the (assumedly) criminal component of his contempt sanction. Consequently, we conclude that insofar as Scott appeals the unsuspended portion of his contempt sanction, his appeal is moot.

**{¶31}** In sum, to the extent that Scott's appeal still presents a live controversy, it does so only with respect to the suspended portion of his contempt sanctions. As we have explained, the suspended portion of Scott's sanction is a civil penalty imposed for civil contempt. As it was a matter of civil contempt, Scott was entitled only to the rights afforded a litigant in a civil action, specifically notice of the charged contempt and an opportunity to be heard. It is uncontested that Scott had notice of the contempt charges, notice of the September 22, 2021 hearing, and an opportunity to make his case at that hearing. As Scott was afforded all the rights due him, the trial court was empowered to find Scott in contempt of court in absentia, and it did not err in doing so.

**{¶32}** Scott's assignment of error is overruled.

## IV. Conclusion

**{¶33}** For the foregoing reasons, Scott's assignment of error is overruled. Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the Crawford County Court of Common Pleas, Juvenile Division.

*Judgment Affirmed*

**ZIMMERMAN, P.J. and WILLAMOWSKI, J., concur.**

**/jlr**