LIMING, APPELLANT, *v.* DAMOS; ATHENS COUNTY
CHILD SUPPORT AGENCY, APPELLEE.

[Cite as *Liming v. Damos,* 133 Ohio St.3d 509, 2012-Ohio-4783.]

*Contempt—Civil and criminal contempt—Purge hearing is civil in nature if original contempt sanction was civil—Due process—Indigent parent has no right to appointed counsel at purge hearing when parent was represented by counsel at original civil-contempt hearing.*

(Nos. 2011-1170 and 2011-1985—Submitted May 23, 2012—Decided October 24, 2012.)

APPEAL from and CERTIFIED by the Court of Appeals for Athens County, No. 10CA39, 2011-Ohio-2726.

_____

SYLLABUS OF THE COURT

1. A hearing to determine whether a contemnor has purged himself of civil contempt (a "purge hearing") is a civil proceeding.

2. The Due Process Clauses of the Ohio and United States Constitutions do not guarantee an indigent parent the right to appointed counsel at a civil-contempt purge hearing.

_____

LANZINGER, J.

{¶ 1} In this case, we must determine whether an indigent parent, whose sentence for civil contempt at a previous hearing for failure to pay child support was suspended on condition that he comply with his child-support obligations for a year, has a right to appointed counsel at a subsequent hearing on a motion to impose the suspended sentence due to noncompliance with the conditions. We hold that the subsequent hearing retains the civil nature of the original civil-

contempt proceeding and that therefore due process does not require that an indigent parent be provided with appointed counsel.

## I. Factual Background

{¶ 2} Appellant, Michael Liming, married Denday Damos on August 8, 1993. The couple had two children. They were divorced on January 19, 2005. Although Liming had been ordered to pay monthly child support, a stipulation was entered that due to Liming's Chapter 13 bankruptcy filing, the support obligation would be lifted during the bankruptcy proceedings. The divorce decree noted this stipulated deviation and named the mother legal custodian and residential parent.

{¶ 3} On April 30, 2007, appellee, Athens County Child Support Enforcement Agency ("the agency") filed a motion to modify Liming's child-support obligation. Finding that the mother had been granted relief from the bankruptcy stay to determine and collect child support, the magistrate recommended that the trial court order Liming to begin payments effective June 5, 2007, the date on which the relief from stay was granted. The trial court adopted the magistrate's decision and ordered Liming to pay current child support with an additional sum per month to address the arrearage.

{¶ 4} Approximately six months later, the agency filed a motion for contempt based on Liming's failure to comply with the child-support order. The magistrate conducted a hearing in October 2008, at which Liming was present and represented by an attorney. The magistrate recommended that the court hold Liming in contempt and sentence him to 30 days in jail with the term suspended as long as he paid his full monthly current support and arrearage payments and complied with other conditions for one year. The contempt would be considered purged as long as Liming remained in compliance. No objections were filed, and the trial court adopted the magistrate's decision on November 12, 2008. Liming did not appeal.

{¶ 5} The following September, the agency filed a motion to impose sentence for Liming's failure to comply with the seek-work program, to report employment changes to the agency, and to pay child support. While the motion was pending, the magistrate conducted a hearing on the mother's objections to the agency's proposed administrative modification of Liming's monthly child-support obligation. The divorced couple was present at the hearing, but neither was represented by counsel. The magistrate recommended that Liming's monthly child-support and arrearage payments be reduced. The trial court adopted the magistrate's decision on June 3, 2010, after no further objections were filed.

{¶ 6} With respect to the contempt sanction, the trial court held a hearing on the motion to impose sentence ("purge hearing") on June 14, 2010. Liming's request at the outset that a public defender be appointed to represent him was denied. The court found that after the November 2008 contempt order, Liming failed to make child-support and arrearage payments for the months of March, May, August, October, and December 2009 and also failed to pay any amount toward his arrearage in the first five months of 2010. The court imposed ten days of the 30-day jail term, suspending the remaining 20 on the condition that for one year, Liming fully comply with the conditions and requirements of the June 3, 2010 judgment entry, which had reduced his monthly child-support and arrearage obligations.

{¶ 7} On appeal, Liming relied on the Sixth and Fourteenth Amendments to the United States Constitution and on the Ohio Constitution, Article I, Sections 10 and 16 to argue that his right to counsel was violated when the court refused to appoint counsel for him at a hearing that was criminal in nature because a jail sentence was imposed. *Liming v. Damos*, 4th Dist. No. 10CA39, 2011-Ohio-2726. The Fourth District Court of Appeals, however, determined that the original contempt hearing against Liming was civil in nature. It then held that the enforcement of Liming's sentence did not convert the purge hearing into a

criminal-contempt proceeding. Instead, the appellate court concluded that the purge hearing retained the civil character of the original contempt proceeding, and therefore, the Sixth Amendment to the United States Constitution and the Ohio Constitution, Article I, Section 10 did not apply.

{¶ 8} The Fourth District then addressed whether Liming had a due process right to counsel and applied the three-factor test in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). After considering Liming's diminished liberty interest at the purge hearing, the low risk of an erroneous decision, and the cost to the government of providing appointed counsel, the court of appeals declined to create a categorical rule that indigent parties previously represented by counsel at a contempt hearing have a due process right to appointed counsel at later purge hearings.

{¶ 9} The Fourth District found that its decision conflicted with the decision of the Sixth District Court of Appeals in *Samantha N. v. Lee A.R.,* 6th Dist. Nos. E-00-036 and E-00-037, 2001 WL 127343 (Feb. 16, 2001). We recognized that a conflict exists. 130 Ohio St.3d 1492, 2011-Ohio-6556, 958 N.E.2d 956. We also accepted the discretionary appeal. 130 Ohio St.3d 1493, 2011-Ohio-6556, 958 N.E.2d 956.

## II. Legal Analysis

*A. Civil v. Criminal Contempt*

{¶ 10} The certified question in this case asks: "Is a purge hearing to impose a suspended sentence for failing to pay child support a civil or criminal proceeding?" 130 Ohio St.3d 1492, 2011-Ohio-6556, 958 N.E.2d 956. The question is more complex than it first appears.

{¶ 11} In general, "[p]roceedings in contempt are sui generis in the law. They bear some resemblance to suits in equity, to criminal proceedings and to ordinary civil actions; but they are none of these." *Cincinnati v. Cincinnati Dist. Council 51*, 35 Ohio St.2d 197, 201-202, 299 N.E.2d 686 (1973). Although the

distinction between civil and criminal contempt is often murky, it is important. *See Internatl. Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994). A party subject to criminal contempt is afforded many of the same constitutional safeguards that a defendant in a criminal trial enjoys. *United States v. Dixon*, 509 U.S. 688, 696, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993). For instance, the burden of proof in criminal contempt is proof beyond a reasonable doubt. *Gompers v. Buck's Stove & Range Co.,* 221 U.S. 418, 444, 31 S.Ct. 492, 55 L.Ed. 797 (1911). More relevant in this case, a person subject to criminal contempt has the right to counsel. *Cooke v. United States*, 267 U.S. 517, 537, 45 S.Ct. 390, 69 L.Ed. 767 (1925).

{¶ 12} Because all contempt involves some type of sanction or punishment, the distinction between civil and criminal contempt is usually based on the purpose to be served by the sanction. *State ex rel. Corn v. Russo*, 90 Ohio St.3d 551, 554, 740 N.E.2d 265 (2001). If the sanction is remedial or coercive and for the benefit of the complainant rather than the court, the contempt proceeding is usually classified as civil. *Brown v. Executive 200, Inc.*, 64 Ohio St.2d 250, 253, 416 N.E.2d 610 (1980). Often, civil contempt is characterized by conditional sanctions, i.e., the contemnor is jailed until he or she complies with the court order. *Id.* On the other hand, criminal contempt is usually characterized by unconditional prison terms or fines. *Id.* at 253-254. The purposes behind the sanction in criminal contempt are primarily to punish the contemnor and to vindicate the authority of the court. *Id.* at 254. To determine the purpose of the sentencing court, the entire record must be reviewed. *State v. Kilbane*, 61 Ohio St.2d 201, 206, 400 N.E.2d 386 (1980) (the trial court's sanction does not dispose of the issue whether contempt is civil or criminal in nature; rather, it is some evidence of what was sought to be accomplished).

{¶ 13} There is no dispute that Liming's original 2008 contempt proceeding was civil in nature. Although he was sentenced to 30 days in jail for

failing to pay child support, the trial court suspended that term and ordered that he could purge the contempt if he complied with several conditions for one year. There was no evidence in the record that the trial court's sentence was meant to be punitive. To the contrary, Liming was given the opportunity to purge the contempt by making payments, and the payments benefitted the mother—facts characteristic of civil contempt. This case arose because the agency alleged that Liming had failed to comply with those purge conditions.

{¶ 14} Liming contends that the latest sanction of ten days' incarceration with the remaining 20 days stayed on the condition that he comply with the child-support order from June 2010 was a hybrid of civil and criminal contempt. According to Liming, the part of the sanction that remained suspended with purge conditions was civil in nature, but the unconditional ten-day sentence was criminal and, therefore, he had a right to appointed counsel.

{¶ 15} This court has previously recognized that a contempt sanction can be both civil and criminal. *Brown*, 64 Ohio St.2d at 253, 416 N.E.2d 610. In *Brown*, one of the contemnors was sentenced to ten days in jail, seven of which could be purged. The court of appeals had held that the contempt was criminal in nature and reversed the judgment because the trial court had used the clear-and-convincing standard. We reinstated a portion of the sentence, determining that because seven days of the ten-day sentence could be purged, that portion was civil in nature. *Id*. at 255. The unconditional three days, however, were criminal, and the case was remanded to the trial court. *Id.* Nevertheless, *Brown* is distinguishable, as it concerned an initial contempt proceeding rather than a purge hearing. The two hearings are distinct.

{¶ 16} A purge hearing is not a new contempt proceeding but a conclusion of the originating contempt hearing, because its purpose is to determine whether the contemnor has satisfied the purge conditions. If the conditions are unfulfilled, the court is entitled to enforce the sentence already imposed, the sanction that

could have been avoided by the contemnor's compliance. With respect to cases of child support, an indigent parent has already enjoyed a number of procedural safeguards by this point. For example, the initial contempt charge must be in writing, and the parent must be provided a hearing. R.C. 2705.03. The notice of hearing must also be accompanied by a summons that includes notice that failure to appear may result in arrest or an order withholding assets, notice of the right to counsel if the parent is indigent and of the need to apply for counsel within three business days of receipt of the summons, notice that the court may refuse to grant a continuance to obtain counsel, and notice of the potential penalties if the parent is found in contempt. R.C. 2705.031(C)(1) through (4). These protections for the parent help ensure that the issue of contempt is correctly decided. The only issue left for the purge hearing is whether the contemnor complied with the purge requirements.

{¶ 17} So while it is true that Liming could no longer purge the ten-day sentence imposed in June 2010, this was not a new sentence or a new punishment. Liming had "held the keys" to the jailhouse door for over a year by the time the purge hearing was conducted, but he had not fully complied with the November 2008 contempt order. It also appears that the trial court was still trying to obtain Liming's compliance with his child-support obligations. Although the order was more coercive because Liming was ordered to serve ten of the 30 days the court had previously suspended, it nonetheless served as an incentive for future compliance if Liming wished to avoid serving the remaining 20 days.

{¶ 18} Accordingly, we agree with the Fourth District and answer the certified question by holding that if the original contempt sanction is civil, a purge hearing retains the civil nature of that proceeding.

*B. Inability to Pay Is a Defense to Contempt*

{¶ 19} In his second proposition of law, Liming proposes another reason why the contempt proceeding against him should be classified as criminal. He

contends that when it is impossible for an indigent contemnor to comply with a purge order, the purge hearing is criminal in nature, and the contemnor is entitled to court-appointed representation. Liming argues that the trial court was obligated to determine whether he was able to pay child support as ordered by the court and failed to do so. We reject this argument.

{¶ 20} It has long been held that in a contempt proceeding, inability to pay is a defense and the burden of proving the inability is on the party subject to the contempt order. *State ex rel. Cook v. Cook*, 66 Ohio St. 566, 570, 64 N.E. 567 (1902). The order of the trial court fixing the amount to be paid and a party's failure to comply with that order serve as prima facie evidence of contempt. *Id.* The presumption in favor of ability to pay arises in this case not just from the judgment entry establishing the amount of child support, but also from Liming's failure to object to or appeal from that order. *See Bly v. Smith*, 94 Ohio St. 110, 114, 113 N.E. 659 (1916). Placing the burden of showing inability to pay on the party charged with contempt is not unreasonable. As we explained in *Cook*, "[t]he defendant's financial condition and ability to pay were peculiarly within his own knowledge. They could not be known with the same certainty to the complainant, nor could she easily produce evidence to maintain the proposition were the burden of proof placed upon her." *Id.* at 571; *see also Hicks v. Feiock*, 485 U.S. 624, 637-638, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988) (placing the burden of proof on the contemnor regarding the ability to pay is constitutionally valid in civil-contempt proceedings).

{¶ 21} At the hearing on the motion to impose the suspended sentence, Liming did not offer any evidence of his inability to pay. He questioned why the agency had not submitted his arrearage amount to the bankruptcy court for payment before his discharge, but he readily acknowledged that he owed the arrearage. Liming made bare assertions that he was unable to make the monthly child-support and arrearage payments as originally ordered by the trial court in

2008, but he said he believed that he could handle the reduced amounts in the June 2010 judgment entry.[1] His statements, however, are insufficient to satisfy his burden of proof on this issue. *See United States v. Hayes,* 722 F.2d 723, 725 (11th Cir.1984), citing *United States v. Rylander*, 460 U.S. 752, 757, 103 S.Ct. 1548, 75 L.Ed.2d 521 (1983) (respondent must go beyond a mere assertion of inability and satisfy his burden of production on the point by introducing evidence in support of his claim).

{¶ 22} Liming argues that his dire financial situation was so obvious that the agency even moved to reduce his monthly obligation and that he was in bankruptcy throughout the support proceedings. Nothing in the record verifies who initiated the administrative review. Moreover, Liming's statement that he was in bankruptcy is inaccurate. Liming's bankruptcy proceedings had long been over. His discharge occurred in August 2008, before the original contempt proceeding, a proceeding at which Liming was represented by counsel and to which he did not file objections. Liming's bankruptcy proceeding is not evidence of his inability to pay his monthly child-support and arrearage obligations in 2009 and 2010.

{¶ 23} Based on the evidence before the trial court, the agency established that Liming had not met his purge conditions. Because he had the burden of proof and failed to produce evidence of inability to pay, the trial court's failure to expressly find that he had the ability to pay did not convert the purge hearing into a criminal proceeding. Therefore, the right to counsel under the Sixth Amendment to the United States Constitution and under the Ohio Constitution, Article I, Section 10 did not apply.

---

1. To the extent that Liming argues that the reduction of the monthly child-support and arrearage obligations that the trial court ordered in June 2010 is some evidence of inability to pay, we note that there is nothing in the record of what occurred during the administrative review conducted by the agency in January 2010 or the hearing on objections before the magistrate in April 2010.

*C. Due Process Right to Counsel*

**{¶ 24}** Having determined that a purge hearing retains the civil nature of the original civil-contempt proceeding, we now must decide whether the Due Process Clauses of the Ohio and United States Constitutions require the appointment of counsel for indigent parents in civil-contempt proceedings for failure to pay child support. The United States Supreme Court recently addressed a similar issue. *Turner v. Rogers*, ___ U.S. ___, 131 S.Ct. 2507, 180 L.Ed.2d 452 (2011).

**{¶ 25}** In *Turner*, a South Carolina man who had previously been held in contempt five times for failure to pay child support was sentenced to 12 months' incarceration following a new show-cause hearing on his arrearage. The trial court ordered that the father could purge himself of contempt and avoid the sentence by having a zero balance on or before his release. The Supreme Court identified the issue before it as "whether the Due Process Clause grants an indigent defendant, such as Turner, a right to state-appointed counsel at a civil contempt proceeding, which may lead to his incarceration." *Id.* at 2515-2516.

**{¶ 26}** After noting cases in which it found that a due process right to counsel for civil proceedings existed[2] and cases in which it did not,[3] the Supreme Court stated: "We believe those statements are best read as pointing out that the Court previously had found a right to counsel '*only*' in cases involving incarceration, not that a right to counsel exists in *all* such cases." (Emphasis sic.) *Id*. at 2517.

---

2. *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) (juvenile delinquency); *Vitek v. Jones*, 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980) (transfer of prison inmate to state hospital for mentally ill); *Lassiter v. Dept. of Social Servs. of Durham Cty.*, 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981) (termination of parental rights).

3. *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) (probation revocation); *Middendorf v. Henry*, 425 U.S. 25, 96 S.Ct. 1281, 47 L.Ed.2d 556 (1976) (summary court-martial).

**{¶ 27}** Although the loss of personal liberty through imprisonment is an important consideration, the Supreme Court nonetheless found that other factors outweigh that private interest and held that

> the Due Process Clause does not *automatically* require the provision of counsel at civil contempt proceedings to an indigent individual who is subject to a child support order, even if that individual faces incarceration (for up to a year). In particular, that Clause does not require the provision of counsel where the opposing parent or other custodian (to whom support funds are owed) is not represented by counsel and the State provides alternative procedural safeguards equivalent to those we have mentioned (adequate notice of the importance of ability to pay, fair opportunity to present, and to dispute, relevant information, and court findings).

(Emphasis sic.) *Id.* at 2520. The *Turner* dissent was even more emphatic that the Due Process Clause does not provide a right to appointed counsel for indigent defendants facing incarceration in civil-contempt proceedings. It reasoned that

> if the Due Process Clause created a right to appointed counsel in all proceedings with the potential for detention, then the Sixth Amendment right to appointed counsel would be unnecessary. * * * The Sixth Amendment, however, is the only constitutional provision that even mentions the assistance of counsel; the Due Process Clause says nothing about counsel. Ordinarily, we do not read a general provision to render a specific one superfluous.

*Id.* at 2522 (Thomas, J., dissenting).

{¶ 28} While *Turner* is instructive, it does not answer the precise question before us, as we are not concerned with due process rights for the initial contempt proceeding, but rather, for the purge hearing. Because due process requires a fundamentally fair proceeding, we will employ the *Mathews v. Eldridge* test used by the court of appeals to determine whether there is a constitutional right to counsel for a purge hearing that is civil in nature. The factors to be considered include (1) the private interest that will be affected by the official action, (2) the risk of an erroneous deprivation of that interest through the procedures used and the probable value of additional or different procedural safeguards, and (3) the government's interest, including the fiscal or administrative burdens of providing additional or substitute procedural requirements. *Mathews*, 424 U.S. at 335, 96 S.Ct. 893, 47 L.Ed.2d 18.

{¶ 29} As in *Turner*, the private interest involved here is the loss of personal liberty through imprisonment. Unlike the father in *Turner*, however, Liming's personal liberty was already conditioned on his continued compliance with the purge conditions. An indigent parent's right to appointed counsel diminishes as his interest in personal liberty also diminishes. *Lassiter v. Dept. of Social Servs. of Durham Cty.*, 452 U.S. 18, 26, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981). This diminished personal-liberty interest has been previously recognized by the United States Supreme Court with regard to parolees and probationers when considering whether due process applies to parole- or probation-revocation hearings. *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). In *Morrissey,* the court observed, "Revocation [of parole] deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions." *Id*. at 480. Like a probationer or parolee, Liming's continued

12

freedom was conditioned on his compliance with his purge requirements; therefore, his personal-liberty interest was a diminished one.

{¶ 30} The second *Mathews* factor evaluates the risk that the procedure will lead to an erroneous decision. We believe that this is highly unlikely for purge hearings. To start, the nature and scope of a purge hearing are straightforward and limited. The issue of contempt—whether a parent has failed to pay child support as ordered—will have already been decided at the initial proceeding for which the parent will have been given notice of the hearing date, the right to counsel if indigent, and the potential penalties. R.C. 2705.031(C). At that initial contempt hearing, the parent will have had the opportunity to defend against the contempt charges and otherwise object to or appeal from a finding of contempt and any purge conditions. Because the propriety of the contempt finding or the purge conditions is not in question at a purge hearing, the only issue for the court to decide is whether the parent complied with those conditions. In this case, Liming was represented by an attorney at the contempt hearing in October 2008. Neither he nor his counsel objected to the magistrate's decision or otherwise appealed the contempt order. The only issue that Liming needed to be prepared to address at the purge hearing was whether he had complied with the conditions. The risk of the court's reaching an erroneous decision at the purge hearing, therefore, was minimal.

{¶ 31} The final *Mathews* factor is the government's interest and the fiscal or administrative burdens of providing additional or substitute procedural requirements. The government has a strong interest in ensuring that parents financially support their children and in resolving these matters as quickly as possible. Otherwise, the state may have to step in and provide aid. Moreover, requiring the court to appoint counsel in every case in which there is the potential that the contemnor will be incarcerated for violating the purge conditions would add significant fiscal and administrative burdens on the state.

**{¶ 32}** In light of Liming's diminished personal-liberty interest, the low risk of an erroneous decision, and the strength of the government's interest, we conclude that the factors weigh against requiring the state to provide indigent parents with counsel at civil-contempt purge hearings. We therefore hold that the Due Process Clauses of the Ohio and United States Constitutions do not require that an indigent parent has the right to appointed counsel at a purge hearing, when that parent was previously represented by counsel at the originating civil-contempt proceeding.

### III. Conclusion

**{¶ 33}** Because a purge hearing does not amount to a new contempt proceeding, we answer the certified question by holding that a hearing to determine whether a contemnor has purged himself of civil contempt is a civil proceeding. We also hold that the Due Process Clauses of the Ohio and United States Constitutions do not guarantee an indigent parent the right to appointed counsel at a civil-contempt purge hearing.

**{¶ 34}** The judgment of the court of appeals is affirmed.

Judgment affirmed.

O'CONNOR, C.J., and LUNDBERG STRATTON, CUPP, and MCGEE BROWN, JJ., concur.

PFEIFER and O'DONNELL, JJ., dissent.

_____

**O'DONNELL, J., dissenting.**

**{¶ 35}** In this appeal, we are confronted with the issue whether an indigent contemnor facing incarceration for failure to comply with the purge conditions of a contempt order based on nonpayment of child support has a right to counsel. I respectfully dissent from the view of the majority because I believe that a trial court must hold a hearing to determine the contemnor's ability to pay and appoint counsel for an indigent before imposing incarceration.

**Factual and Procedural Background**

{¶ 36} On September 11, 2008, the Athens County Child Enforcement Agency filed a motion for contempt pursuant to R.C. 2705.031 against Liming, alleging that he failed to comply with an order of the court dated January 11, 2008, regarding payment of child support.

{¶ 37} On October 15, 2008, a juvenile court magistrate held a hearing. Liming at that time was represented by counsel, and a staff attorney represented the child-support-enforcement agency. The magistrate issued a decision recommending that the court find Liming in contempt and sentence him to 30 days in jail, which could be purged if Liming complied with certain payment and other conditions set forth in the recommendation. Subsequent to that hearing, counsel for Liming withdrew.

{¶ 38} None of the parties objected to the magistrate's recommendation, and the court adopted it on November 12, 2008.

{¶ 39} On September 15, 2009, the agency moved to impose the jail sentence because Liming had failed to comply with the conditions set forth in the November 2008 order. On June 14, 2010, the court held a hearing on that motion, and Liming requested court-appointed counsel. The court denied his request, and on July 28, 2010, imposed ten days of the original 30-day jail sentence but suspended the remaining 20 days on condition that Liming comply with an order entered June 3, 2010, which decreased his monthly child-support payments. The court issued that entry in response to an administrative review by the agency, but the downward modification set forth in the entry had no bearing on the finding of contempt or the alleged inability of Liming to purge that contempt.

{¶ 40} On August 11, 2010, an attorney employed by the Ohio Public Defender filed a notice of appeal in the Fourth District Court of Appeals on behalf of Liming, as well as an affidavit of indigency and a motion for appointment of appellate counsel. In an entry dated September 21, 2010, the juvenile court

granted that motion, appointing counsel and ordering that the transcript of the June 14, 2010 hearing be prepared at state expense.

{¶ 41} On appeal, Liming relied on the Sixth and Fourteenth Amendments to the United States Constitution and on the Ohio Constitution, Article I, Sections 10 and 16, asserting that he had a right to appointed counsel at the purge hearing. The court of appeals rejected the Sixth Amendment argument because the purge hearing "retained the civil character of the original contempt proceeding" and "did not constitute a criminal prosecution." *Liming v. Damos*, 4th Dist. No. 10CA39, 2011-Ohio-2726, at ¶ 14. With respect to his argument involving the Fourteenth Amendment, the court of appeals applied a due process analysis established in *Mathews* v. *Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), and concluded that Liming did not have a procedural due process right to counsel.

### Due Process

{¶ 42} "Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Foucha* v. *Louisiana,* 504 U.S. 71, 80, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992). A governmental action that infringes upon this freedom "constitutes a significant deprivation of liberty that requires due process protection." *Addington v. Texas*, 441 U.S. 418, 425, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979).

{¶ 43} To determine whether a governmental action satisfies the dictates of procedural due process, the Supreme Court established an analysis in *Mathews* v. *Eldridge* that requires the balancing of three competing factors: (1) the private interest affected by the governmental action, (2) the risk of an erroneous deprivation of such interest through the procedures used and the probable value of additional or different procedural safeguards, and (3) the governmental interest at stake, including the fiscal or administrative burdens of providing additional or

substitute procedural requirements. 424 U.S. at 334-335, 96 S.Ct. 893, 47 L.Ed.2d 18.

{¶ 44} The Supreme Court recently applied that analysis to determine "whether the Fourteenth Amendment's Due Process Clause requires the State to provide counsel (at a civil-contempt hearing) to an *indigent* person potentially faced with such incarceration." (Emphasis sic.) *Turner v. Rogers*, ___U.S.___, 131 S.Ct. 2507, 2512, 180 L.Ed.2d 452 (2011). In that case, a South Carolina court found Michael Turner, an indigent parent who had not been appointed counsel, in contempt of a previous child-support order and sentenced him to 12 months of incarceration. The Supreme Court held that "the Due Process Clause does not *automatically* require the provision of counsel at civil contempt proceedings to an indigent individual who is subject to a child support order, even if that individual faces incarceration" (emphasis sic), *id.* at 2520, but attached the caveat that "the State must nonetheless have in place alternative procedures that assure a fundamentally fair determination of the critical incarceration-related question, whether the supporting parent is able to comply with the support order." *Id.* at 2512.

{¶ 45} The court regarded the following examples as sufficient safeguards for purposes of due process:

> (1) notice to the defendant that his "ability to pay" is a critical issue in the contempt proceeding; (2) the use of a form (or the equivalent) to elicit relevant financial information; (3) an opportunity at the hearing for the defendant to respond to statements and questions about his financial status, (*e.g.*, those triggered by his responses on the form); and (4) an express finding by the court that the defendant has the ability to pay.

*Id.* at 2519.

{¶ 46} In the instant case, the agency filed a motion for contempt pursuant to R.C. 2705.031. As required by that statute, the summons contained safeguards listed in *Turner*, including "[n]otice that the accused has a right to counsel, and that if indigent, the accused must apply for a public defender or court appointed counsel within three business days after receipt of the summons." R.C. 2705.031(C)(2). A proceeding pursuant to this statute is civil and allows a contemnor to purge by payment of the arrearage. Due to its civil nature, the proceedings provide a contemnor with "fewer procedural protections than in a criminal case." *Turner* at 2516.

{¶ 47} The right to counsel in a contempt proceeding does not turn on the civil label attached, but rather on whether the procedure satisfies the specific dictates of due process prescribed by *Mathews*. *Id.* The starting point of this analysis required the court to determine whether Liming qualified as indigent, which it did not do. Assuming indigency, balancing the three competing factors set forth in *Mathews* compels me to conclude that the court violated Liming's right to procedural due process when it denied his request for appointed counsel.

{¶ 48} First, the private interest affected by the governmental action weighs heavily in favor of the right to counsel. Here, the interest at stake in Liming's purge hearing consisted of his personal freedom, and the threatened loss of that liberty through imprisonment demanded due process protection. *Id.*, ___U.S.___, 131 S.Ct. at 2518, 180 L.Ed.2d 452. Although Liming had a diminished liberty interest, if truly indigent, he did not "hold the keys to the jailhouse door." As explained by the Tenth Circuit Court of Appeals in *Walker v. McLain:*

> It is true that the defendant's right to appointed counsel
> diminishes as his interest in personal liberty diminishes. However,

18

petitioner's liberty interest cannot truly be viewed as conditional. If petitioner is truly indigent, his liberty interest is no more conditional than if he were serving a criminal sentence; *he does not have the keys to the prison door if he cannot afford the price*. The fact that he should not have been jailed if he is truly indigent only highlights the need for counsel, for the assistance of a lawyer would have greatly aided him in establishing his indigency and ensuring that he was not improperly incarcerated. The argument that the petitioner has the keys to the jailhouse door does not apply to diminish petitioner's liberty interest.

(Emphasis added and citation omitted.) *Id.*, 768 F.2d 1181, 1184 (10th Cir.1985).

{¶ 49} In the case of an indigent parent, the opportunity to purge a finding of contempt made pursuant to R.C. 2705.031 is illusory. For purposes of determining a right to counsel, there is no real difference between an initial contempt hearing and a subsequent purge hearing, because both proceedings are part of a single contempt action. Further, the inability of an indigent parent to comply with the purge conditions of the contempt order renders imprisonment a substantial certainty, thereby virtually guaranteeing the loss of personal liberty. Thus, given the requirement in R.C. 2705.031 that an indigent contemnor be provided with notice of the right to counsel when a contempt action is filed, the express acknowledgement by the majority that "[a] purge hearing is not a new contempt proceeding but a conclusion of the originating contempt hearing" highlights the fallacy of even making this distinction.

{¶ 50} Regarding the second factor, contrary to the view of the majority, the purge hearing carried with it a high risk of an erroneous determination. The Supreme Court noted in *Turner* that "[g]iven the importance of the interest at stake, it is obviously important to assure accurate decision-making in respect to

the key 'ability to pay' question." *Turner*, ___U.S.___, 131 S.Ct. at 2518, 180 L.Ed.2d 452. The need for accuracy is further underscored by the fact that "ability to comply marks a dividing line between civil and criminal contempt." *Id.*, citing *Hicks v. Feiock*, 485 U.S. 624, 635, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988), fn. 7. Indeed, as one court explained:

> When an indigent litigant is forced to proceed at an ability-to-pay hearing without counsel, there is a high risk of an erroneous determination and wrongful incarceration. However seemingly simple support enforcement proceedings may be for a judge or lawyer, gathering documentary evidence, presenting testimony, marshalling legal arguments, and articulating a defense are probably awesome and perhaps insuperable undertakings to the uninitiated layperson. The task is that much more difficult when the indigent must defend himself after he has already been deprived of his freedom. *See, e.g.*, *Walker* [*v. McLain*] 768 F.2d [1181] 1184 [(10th Cir.1985)] ("The issues in a proceeding for wilful nonsupport are not so straightforward that counsel will not be of assistance in insuring the accuracy and fairness of the proceeding. This is particularly true where the petitioner is indigent and is attempting to prove his indigency as a defense to wilfulness").

*Pasqua v. Council*, 186 N.J. 127, 145, 892 A.2d 663 (2006).

{¶ 51} In this case, Liming claimed indigency at the purge hearing and bore the burden of proving the defense of inability to pay. The court denied his request for the appointment of counsel, the purpose of which is to aid in providing that defense, and did so without first determining if Liming qualified as indigent.

The failure of the court to make "an express finding" regarding ability to pay constituted a deficiency of a critical safeguard noted in *Turner*. *Id.* at 2519; *see also id.* at 2518-2519 ("the critical question likely at issue in these cases concerns, as we have said, the defendant's ability to pay. That question is often closely related to the question of the defendant's indigence"). In addition, within weeks of denying the request by Liming at the purge hearing to appoint him counsel, when the risk of the deprivation of his liberty interest came to fruition, the juvenile court granted his motion for the appointment of appellate counsel based on his affidavit of indigency. The irreconcilable nature of these actions emphasizes the risk factor associated with an erroneous deprivation of interests.

{¶ 52} Lastly, I concur in the assessment of the majority that the government has an interest in ensuring that parents financially support their children, and although providing counsel to indigent parents increases the fiscal and administrative burdens of the state, the interest of the government is not somehow undercut by providing counsel to parents who have no fiscal ability to comply with the conditions to purge a previous contempt order.

{¶ 53} Based on the foregoing, the failure of the juvenile court to determine whether Liming qualified as indigent marks the absence of a critical safeguard. Assuming Liming qualified as indigent, which the court so determined when it appointed him appellate counsel within only weeks of having denied him appointed counsel at the purge hearing, balancing the three competing factors set forth in *Mathews* compels me to conclude that he was denied procedural due process. Thus, the procedure in this case did not meet the strict mandates of due process.

## Conclusion

{¶ 54} Ability to pay is the essence of an action for contempt for failure to pay. A contempt action includes hearings to determine contempt as well as the purge of that contempt. The right of a parent facing incarceration due to

noncompliance with the purge conditions of a contempt order is not dependent on the nature of a specific hearing or whether the action is civil or criminal. Rather, the right of an indigent parent to counsel emanates from the possibility of incarceration for failure to comply with an order to pay when the alleged indigent contemnor has no ability to pay. Although *Turner* does not require the appointment of counsel in all such instances, assuming that Liming qualified as indigent at the purge hearing, balancing the three competing factors in *Mathews* favors the appointment of counsel, and the failure of the court to make an express finding as to his ability to pay, and to appoint counsel upon a finding of indigency, violated his right to procedural due process.

{¶ 55} For these reasons, I would reverse the judgment of the Fourth District Court of Appeals and remand the matter to the juvenile court for determination as to whether Liming qualified as indigent and for the appointment of counsel upon a finding of indigency.

PFEIFER, J., concurs in the foregoing opinion.

_____

Timothy Young, Ohio Public Defender, and E. Kelly Mihocik, Assistant Public Defender, for appellant.

Keith M. Wiens, for appellee.

_____