[Cite as *C.D. v. P.O.C.*, 2024-Ohio-1294.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY

| | | |
|---|---|---|
| C.D. nka C.A. | : | |
| | : | |
| Appellee | : | C.A. No. 2023-CA-15 |
| | : | |
| v. | : | Trial Court Case No. 00-JUV-0096 |
| | : | |
| P.O.C. | : | (Appeal from Common Pleas Court- |
| | : | Juvenile Division) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on April 5, 2024

. . . . . . . . . . .

ADDIE KING, Attorney for Appellant

ROBERT LOGSDON, Attorney for Appellee, Child Support Enforcement Agency

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Appellant, P.O.C., appeals from a trial court judgment sentencing him to 20 days in jail for failing to comply with purge conditions relating to non-payment of child support. According to P.O.C., the trial court abused its discretion in imposing jail time because he had made payments after the purge conditions were imposed and was then unable to pay because he was incarcerated. P.O.C. also contends the court erred in

failing to award him jail-time credit toward the sentence.

{¶ 2} For the reasons discussed below, we conclude that the court did not abuse its discretion by sentencing P.O.C. for failure to comply with the purge conditions. We further find that any jail-time credit claim is moot because P.O.C. completed the 20-day jail sentence, and no possible relief can be afforded. Accordingly, the judgment of the trial court will be affirmed.

I. Facts and Course of Proceedings

{¶ 1} This case began in February 2000 with the filing of an application for support by C.A. and the Clark County Department of Human Services, Child Support Enforcement Agency Division ("CSEA"). The application was brought against P.O.C., the alleged father of C.A.'s minor child, who had been born in 1998. When the application was filed, P.O.C.'s listed address was the London Correctional Institution.

{¶ 2} In April 2000, the court issued an order requiring P.O.C. to pay $296.43 per month, effective July 29, 1998. This represented child support, birth costs, and payment on the arrearage. No appeal was taken from the order. Subsequently, in November 2007, CSEA filed a contempt motion against P.O.C. for nonpayment of support, and service was made on him at a residential address. After orally requesting and receiving an extension of time to obtain counsel, P.O.C. failed to appear for a January 23, 2008 contempt hearing. The court found that P.O.C. owed $26,981.42 as of December 31, 2008, and held him in contempt. *See* Journal Entry (Jan. 28, 2008), p. 2-3.[1]

---

[1] The date for the total arrearage was later corrected to December 31, 2007, per a nunc pro tunc order entered on April 11, 2008.

{¶ 3} The court sentenced P.O.C. to 30 days in jail, but it suspended imposition of the sentence and allowed P.O.C. to purge the contempt by complying with court orders for a year. The court's order included paying $296.43 per month, with failure to pay each month resulting in imposition of the suspended jail sentence. *Id.* at p. 3. No appeal was taken from this order.

{¶ 4} In September 2008, CSEA filed a motion seeking imposition of the jail sentence based on P.O.C.'s failure to comply with the purge order. However, in October 2008, the court dismissed the scheduled imposition hearing due to substantial compliance. Entry (Oct. 29, 2008). In March 2009, CSEA filed another contempt motion due to P.O.C.'s alleged failure to pay support as ordered. The court set a hearing for April 15, 2009, and P.O.C. appeared for the hearing. Finding that P.O.C. had admitted his failure to comply with the court's prior orders, the court held P.O.C. in contempt and sentenced him to 60 days in jail. The court again allowed P.O.C. to purge the contempt by paying $296.43 per month and set imposition of sentence for July 20, 2009. *See* Magistrate's Decision and Journal Entry Adopting the Magistrate's Decision (Apr. 17, 2009). P.O.C. did not object to the magistrate's decision and did not appeal the court's order.

{¶ 5} After P.O.C. failed to appear at the July 2009 hearing, the court issued a capias for his arrest. In September 2009, an adjustment review entry was filed, requiring P.O.C. to continue to pay $45.00 per month in child support plus $21.67 per month on the birth costs, for a total of $66.67 per month. At CSEA's request, the court also withdrew the capias because P.O.C. was then incarcerated. Order (Sept. 11, 2009).

{¶ 6} Subsequently, the court filed a termination order ending the support obligation as of July 29, 2016, because the child had reached the age of majority and was no longer attending an accredited high school on a full-time basis. At the time, the court calculated P.O.C.'s total unpaid child support obligation to be $25,474.44. Termination Order (Sept. 28, 2016).

{¶ 7} On February 24, 2020, CSEA again filed a motion asking the court to hold P.O.C. in contempt for failing to pay on the support arrearage. P.O.C. was served with notice of an April 9, 2020 hearing, but the court then continued the hearing to July 9, 2020. After P.O.C. appeared for that hearing, the court found him in contempt. At that time, the court found the unpaid support obligation to be $26,021.53 and sentenced P.O.C. to 90 days in jail. The court's order set imposition for September 14, 2020, and said that P.O.C.'s failure to pay $67.57 each month would result in imposition of the suspended jail sentence. Magistrate's Decision and Journal Entry Adopting the Magistrate's Decision (July 15, 2020), p. 3.

{¶ 8} P.O.C. did not file objections to the magistrate's decision and no appeal was taken from the contempt decision. P.O.C. did appear for the September 14, 2020 hearing, and the court then rescheduled imposition for December 7, 2020. After P.O.C. failed to appear in December, however, the court issued a capias for his arrest. The court also set a bond of $33,000. Entry (Dec. 28, 2020), p. 1.

{¶ 9} More than two years later, P.O.C. was arrested and was given a copy of the warrant. On March 13, 2023, the court held an imposition hearing on this case and another P.O.C. support case (2008-JUV-1333). At that time, CSEA noted that P.O.C.'s

most recent payment on the current case was $200 on September 17, 2020. Previously, P.O.C. had made a $200 payment in August 2020. Transcript of Proceedings (Mar. 13, 2023 Imposition Hearing) ("Tr."), 3-4. According to P.O.C., he had not made payments after September 2020 due to COVID and confusion over where he should make payments. *Id.* at 4-5. P.O.C. further said that he had been in jail since January 27, 2021 (for what appear to have been various criminal cases) and that he had a pretrial in another criminal case in Clark County on March 22, 2023. The trial in that case was scheduled for April 13, 2023. *Id.* at 6.

{¶ 10} During the March 2023 imposition hearing, P.O.C. said the bond for the pending Clark County criminal case was $10,000 and that he was not going to post it. *Id.* at 7. The court then imposed a 20-day jail sentence for failure to purge the contempt. In this regard, the court noted that the purge sentence would end before the scheduled April 2023 trial. As a result, nothing connected to the current case would keep P.O.C. in jail if he resolved the Clark County case. *Id.* at 8-9. The court also stressed that P.O.C.'s sentence for the pending contempts could have been 120 days. *Id.* at 9.

{¶ 11} Following the hearing, the court filed an entry finding that P.O.C. had failed, without justifiable cause, to purge himself of the contempt of the court's prior orders. The court then stated:

> **IT IS THEREFORE, ORDERED, JUDGED and DECREED** that effective **March 13, 2023** the Defendant, [P.O.C.] shall be **incarcerated in the Clark County Jail for a period of 20 consecutive days to be served concurrently with the 30 day sentence imposed in Case No. 08-JUV-**

**1333**.

(Emphasis sic.) Entry (Mar. 16, 2023), p. 1. Consequently, the total sentence imposed for the two contempt cases was 30 days in jail, with 20 days to be served on the case before us.

{¶ 12} P.O.C. timely appealed from the trial court's judgment and raises two assignments of error.

### I. Imposition of Sentence for Contempt

{¶ 13} P.O.C.'s first assignment of error states that:

The Trial Court Erred in Imposing Time for Contempt When Appellant Made Payments Prior to the Imposition Hearing and Subsequently Was Unable to Purge His Contempt While Incarcerated.

{¶ 14} Under this assignment of error, P.O.C. claims he should not have been sentenced to jail because he made payment on the contempt matter, was then incarcerated, and was subject to further incarceration.

{¶ 15} We review contempt orders for abuse of discretion. *State ex rel. Cincinnati Enquirer v. Hunter*, 138 Ohio St.3d 51, 2013-Ohio-5614, 3 N.E.3d 179, ¶ 21. An abuse of discretion " 'implies that the court's attitude is unreasonable, arbitrary or unconscionable.' " *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983), quoting *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980). "[M]ost instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary." *AAAA Ents., Inc. v. River*

*Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). "A decision is unreasonable if there is no sound reasoning process that would support" it. *Id.* This is a "highly deferential standard of review," and "we will not lightly substitute our interpretation for that of the issuing court." *Hunter* at ¶ 29.

{¶ 16} "Contempt is defined in general terms as disobedience of a court order." *State ex rel. Corn v. Russo*, 90 Ohio St.3d 551, 554, 740 N.E.2d 265 (2001). "The power of contempt is inherent in a court, such power being necessary to the exercise of judicial functions." *Denovchek v. Bd. of Trumbull Cty. Commrs.*, 36 Ohio St.3d 14, 15, 520 N.E.2d 1362 (1988). "Civil contempt sanctions are designed for remedial or coercive purposes and are often employed to compel obedience to a court order. * * * Thus, civil contempts are characterized as violations against the party for whose benefit the order was made." (Citation omitted.) *Corn* at 554-555. Where a court suspends a contempt sentence and allows the contempt to be purged by compliance with imposed conditions, the contempt is considered civil in nature. *E.g., Liming v. Damos*, 133 Ohio St.3d 509, 2012-Ohio-4783, 979 N.E.2d 297, ¶ 12-13 and 24.

{¶ 17} A contempt judgment "is a final, appealable order at the time sentence is imposed and the matter is journalized, but * * * a contemnor may have an additional appeal on the limited question of whether or not the purge conditions have been met following execution of the sentence on the failure to purge." *Docks Venture, L.L.C. v. Dashing Pacific Group, Ltd.*, 141 Ohio St.3d 107, 2014-Ohio-4254, 22 N.E.3d 1035, ¶ 2. "[A]t a purge hearing, 'the propriety of the contempt finding or the purge conditions is not in question,' and the hearing is limited to determining whether the contemnor complied

with conditions imposed for purging contempt." *Id.* at ¶ 20, quoting *Liming* at ¶ 30. Here, because P.O.C. failed to appeal from the December 2020 contempt finding, the only issue is whether the purge conditions were met.

**{¶ 18}** "A purge hearing is not a new contempt proceeding but a conclusion of the originating contempt hearing, because its purpose is to determine whether the contemnor has satisfied the purge conditions. If the conditions are unfulfilled, the court is entitled to enforce the sentence already imposed, the sanction that could have been avoided by the contemnor's compliance." *Liming* at ¶ 16.

**{¶ 19}** Before we address the purge conditions, we note that P.O.C. is incorrect in asserting that the trial court improperly mentioned 120 days as a potential sanction. Appellant's Brief, p. 6. According to P.O.C., there was no record whether he had been sentenced for contempt in the past, and, therefore, the maximum jail term to which he could have been sentenced in this case was 30 days. *Id.* at p. 6-7.

**{¶ 20}** R.C. 2705.05(A) provides that if an accused is found guilty of contempt, the court may impose one of three listed penalties, which include fines, jail terms, or both. Regarding jail terms, for a first offense, the court may impose "a definite term of imprisonment of not more than thirty days in jail." R.C. 2705.05(A)(1). For a second offense, the definite term is 60 days, and for a third offense, the definite term is 90 days. R.C. 2705.05(A)(2) and (3). The statute does not say that an individual must have previously served a jail term on a prior contempt finding; it only says that "If the accused is found guilty, the court may impose" any of these penalties. *Compare Ferritto v. Krihwan*, 11th Dist. Lake No. 2009-L-114, 2011-Ohio-4017, ¶ 32-37 (noting that a 90-day

sentence was appropriate because husband had twice before been found in contempt and had been sentenced, even though the court had also included purge conditions; there was also no indication that he had previously been jailed.)

{¶ 21} As the factual statement here reveals, the trial court had twice previously found P.O.C. in contempt for failing to pay support. On each prior occasion, the court sentenced P.O.C. to a jail term. The correct potential sentence here, therefore, was 90 days, as specified in R.C. 2705.05(A)(3). Although this was less than "120" days, the reason the trial court mentioned 120 days at the hearing was because it was considering contempt charges in two separate non-support cases. One was the current case, for which a 90-day sentence was possible, and the other was the 2008 case. In that case, which involved a first contempt finding, the court had previously sentenced P.O.C. to 30 days in jail but had delayed the sentence. Tr. at 4.

{¶ 22} Consequently, the combined potential total jail term in these cases was 120 days, and the court correctly referenced that amount of time. In any event, the court sentenced P.O.C. to only 20 days in jail on the current, third contempt charge, which was far below the possible 90-day sentence that it could have imposed. It was also under the 30-day sentence for a first offense, as P.O.C. concedes. Appellant's Brief at p. 7.

{¶ 23} In his brief, P.O.C. also relies on a case that *Ferritto* distinguished. *See* Appellant's Brief at p. 5, discussing *Pingue v. Pingue*, 5th Dist. Delaware No. 95CAF02006, 1995 WL 768535 (Nov. 6, 1995). *See also Ferritto*, 11th Dist. Lake No. 2009-L-114, 2011-Ohio-4017, at ¶ 32-34. In this regard, P.O.C. argues that if a party has not been sentenced for contempt, the party cannot be considered to have been

previously convicted for purposes of R.C. 2705.05.

**{¶ 24}** In *Pingue*, the Fifth District Court of Appeals held that "where a party has not been sentenced by the court on the charge of contempt, said party has not been previously convicted of said charge within the meaning of R.C. 2705.05 and is not subject to that statute's penalty enhancement provisions relative to said charge." *Id.* at *5. This statement was based on an analogy between R.C. 2705.05's penalty enhancement provisions and those for theft offenses in R.C. 2913.02. In this vein, the Fifth District noted that "where an accused has entered a plea of guilty to a theft offense but has not been sentenced by the court on that charge, such offender has not been previously convicted of a theft offense within the meaning of R.C 2913.02(B)." *Id.* at *5, citing *State v. Henderson*, 58 Ohio St.2d 171, 389 N.E.2d 494 (1979), syllabus.

**{¶ 25}** When *Henderson* was decided, R.C. 2913.02(B) stated that:

Whoever violates this section is guilty of theft. If the value of the property or services stolen is less than one hundred fifty dollars, violation of this section is petty theft, a misdemeanor of the first degree. If the value of the property or services stolen is one hundred fifty dollars or more, or if the property stolen is any of the property listed in section 2913.71 of the Revised Code, [o]r if the offender has previously been convicted of a theft offense, then violation of this section is grand theft, a felony of the fourth degree."

*Henderson* at 172-73.

**{¶ 26}** The provisions in this statute did not simply increase a defendant's

sentence; they elevated the degree of the offense. In concluding that "[t]o constitute a prior conviction for a theft offense, there must be a judgment of conviction as defined in Crim.R. 32(B)," the court in *Henderson* primarily relied on the following points: (1) R.C. 2913.03(B) did not refer only to an "offense," but qualified this term by indicating that a "conviction" is required; (2) previously, courts had held that a guilty plea was not the equivalent of a conviction; (3) because a prior conviction was an element of the offense, R.C. 2945.75(B) mandated that the conviction be proven by certified copies of the judgment entry, along with evidence that the defendant was the person named in the judgment of conviction; (4) under Crim.R. 32(B), a guilty plea is only one step in rendering a judgment; and (5) the weight of authority found that, in this type of situation, the sentence must have been pronounced on the prior verdict for a prior conviction enhancement to apply. *Id.* at 175-179.

{¶ 27} In later decisions, the Supreme Court of Ohio clarified that "where the existence of a prior conviction enhances the penalty for a subsequent offense, but does not elevate the degree thereof, the prior conviction is not an essential element of the subsequent offense, and need not be alleged in the indictment or proved as a matter of fact." *State v. Allen*, 29 Ohio St.3d 53, 55, 506 N.E.2d 199 (1987), *superseded by statute on other grounds as noted in State v. Varner*, 2020-Ohio-1329, 153 N.E.3d 514, ¶ 30-33 (11th Dist.). *See also State v. Brooke*, 113 Ohio St.3d 199, 2007-Ohio-1533, 863 N.E.2d 1024, ¶ 8 (citing *Allen* and stating that "w]hen existence of a prior conviction does not simply enhance the penalty but transforms the crime itself by increasing its degree, the prior conviction is an essential element of the crime and must be proved by the state.").

{¶ 28} In a more recent case, the Supreme Court of Ohio considered a statute that allowed elevation of domestic violence charges to third-degree felonies based on third-time offenders. *See State v. Gwen*, 134 Ohio St.3d 284, 2012-Ohio-5046, 982 N.E.2d 626, ¶ 3 and 10-11, referencing R.C. 2919.25(D)(4).[2] Citing *Allen*, the court noted that "an element elevates the degree of the offense; an enhancement provision increases only the penalty." *Id.* at ¶ 10.

{¶ 29} Under R.C. 2919.25(A)(2), the crime, as relevant in *Gwen,* was a first-degree misdemeanor, but R.C. 2919.25(D)(4) raised the degree of the crime from a first-degree misdemeanor to a third-degree felony if the specified conditions were present. *Id.* In contrast to the statutory provision considered in *Henderson*, however, R.C. 2919.25(D)(4) stated, in pertinent part, that "If the offender *previously has pleaded guilty to or been convicted of* two or more offenses of domestic violence * * * a violation of division (A) or (B) of this section is a felony of the third degree." (Emphasis added.)

{¶ 30} Consequently, while the state still had to prove the element, the court found that "[b]y using the phrase 'pleaded guilty to' as an alternative to 'convicted of' in R.C. 2919.25(D)(4), the General Assembly has allowed the state to offer evidence of a defendant's guilty plea as proof of a prior offense of domestic violence." *Id.* at ¶ 11.

{¶ 31} The rest of the discussion in *Gwen* involves the fact that if the state chooses to prove a conviction (rather than a guilty plea), it is not restricted just to the method outlined in R.C. 2945.75(B)(1), i.e., submitting a certified copy of the judgment entry plus

---

[2] R.C. 2919.25 has since been amended in 2018, but the relevant statutory provisions were not affected. *See* Am.Sub. S.B. 201, 2018 Ohio Laws 157, effective March 22, 2019.

evidence that the defendant was the named person. Instead, other methods, like stipulations, can be used. If the state uses a certified judgment entry, however, the entry must comply with Crim.R. 32(C). *Id.* at ¶ 13-24. The point is that the wording the legislature uses controls.

**{¶ 32}** Returning to the wording of R.C. 2705.05, the statute does not require a conviction as in *Henderson*, or even a guilty plea as was mentioned in *Gwen*. Instead, the statute simply indicates that if a party is found guilty of contempt, certain penalties may be imposed for a "first offense," a "second offense," and a "third offense." As a result, the analogy that *Pingue* used is questionable, given the differences in wording and the fact that only a penalty enhancement was involved, not elevation in the degree of a offense. Only a finding of "guilt" of an "offense" is required.

**{¶ 33}** As an additional point, the analogy with *Henderson* and other such cases is questionable because they involve increasing a defendant's degree of offense based on prior convictions or guilty pleas in separate criminal cases, not in the same case. In contrast, a trial court errs in assessing an increased penalty under R.C. 2705.05 based on the fact that the litigant has been found guilty of contempt in a separate case. *See Stewart v. Stark Cty. Child Support Enforcement Agency*, 5th Dist. Stark No. 2009CA00008, 2009-Ohio-6626, ¶ 31 (the trial court erred in sentencing appellant to 30 days in one child support case and 60 days in a separate child support case, for a total 90-day sentence, because the offense in each case was the first violation).

**{¶ 34}** This is consistent with what the trial court did here. Even though P.O.C.'s two child support cases were considered together here (likely for convenience because

they involved the same contemnor and the same court), the punishment in Case No. 2008-JUV-1333 was imposed only for a first offense. The court did not elevate the punishment for that case even though P.O.C. had previously been found guilty of contempt in the present case, Case No. 2000-JUV-0096.

{¶ 35} Nonetheless, we need not decide or rely on these points because the trial court did sentence P.O.C. and the factor mentioned in *Pingue*, i.e., failure to impose a sentence, did not exist. *Ferritto*, in fact, distinguished *Pingue* on this basis. *See Ferritto*, 11th Dist. Lake No. 2009-L-114, 2011-Ohio-4017, at ¶ 32-34.

{¶ 36} Turning to the issue of whether the purge conditions had been satisfied, clearly they had not. P.O.C. contends that sentence should not have been imposed because he made the equivalent of six months of payments between July 2020 and January 27, 2021, then had been incarcerated, and faced further incarceration. Appellant's Brief at p. 7. According to P.O.C., the trial court should not have held him in contempt for failing to pay child support when he was incarcerated. However, the cases P.O.C. cites do not apply. For example, in *Burchett v. Miller*, 123 Ohio App.3d 550, 704 N.E.2d 636 (6th Dist.1997), the trial court sentenced the appellant to 30 days in jail but stayed sentence on the condition that he pay support as ordered. *Id.* at 552. However, the court knew the appellant had pending criminal charges and was on house arrest when the original order was entered. *Id.* at 553.

{¶ 37} When the child support agency later moved to impose the ordered sentence, appellant was incarcerated, and he was still incarcerated at the time of imposition when the court ordered him to serve 30 days in jail. *Id.* The court of appeals

found that this was unreasonable and an abuse of discretion, stating: "Due to his continued house arrest or incarceration, appellant was never afforded a true opportunity to comply with the trial court's conditions that could have allowed him to purge himself of the contempt." *Id.*

{¶ 38} Similarly, we have also held that "[a]n obligor generally cannot be held in contempt for failure to pay child support while incarcerated." *L.B. v. T.B.*, 2d Dist. Montgomery No. 24441, 2011-Ohio-3418, ¶ 19.

{¶ 39} However, P.O.C. was not incarcerated when he was held in contempt or when the purge conditions were ordered. Instead, P.O.C. had a chance to comply but failed to do so before he was incarcerated. Specifically, although P.O.C. made some initial payments, he did not make any payments for four months. He also failed to appear for the December 2020 imposition hearing even though he admitted knowing about it and was not in jail at the time. *See* Tr. at 5. Accordingly, the trial court did not abuse its discretion in finding that P.O.C. had failed to satisfy the purge conditions and in sending him to jail. The first assignment of error is overruled.

III. Jail Time Credit

{¶ 40} P.O.C.'s second assignment of error states that:

The Trial Court Erred in Not Determining the Issue of Jail Time Credit Before Imposing Sentence on the Underlying Contempt Finding After Service of Capias on Appellant in Custody.

{¶ 41} Under this assignment of error, P.O.C. contends that the trial court erred in

failing to credit him with 13 days of jail-time credit. According to P.O.C., this occurred because he was being held on a capias in this case in another jail for 13 days before being transported to the Clark County jail. In response, the State argues the issue is moot because any jail-time credit adjustment would not impact the current case; P.O.C. has been discharged from custody in this matter. We agree with the State.

{¶ 42} "The role of courts is to decide adversarial legal cases and to issue judgments that can be carried into effect." *Cyran v. Cyran*, 152 Ohio St.3d 484, 2018-Ohio-24, 97 N.E.3d 487, ¶ 9, citing *Fortner v. Thomas*, 22 Ohio St.2d 13, 14, 257 N.E.2d 371 (1970). "Under the mootness doctrine, American courts will not decide cases in which there is no longer an actual legal controversy between the parties. * * * Thus, when parties 'lack a legally cognizable interest in the outcome,' a case becomes moot." *Id.*, quoting *Powell v. McCormack*, 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969). While some exceptions to mootness exist, P.O.C. has not suggested any that might apply.

{¶ 43} As noted, during the imposition hearing, the trial court verified that P.O.C. was then being held in a separate Clark County criminal case that was scheduled for trial in a month and that P.O.C. was not going to post bond in that case. As a result, the trial court imposed only a 20-day sentence for the failure to purge, which would be completed before the scheduled trial. Tr. at 6-7 and 9. As noted in the court's order, the purge sentence began on March 13, 2023; it therefore would have been completed by April 1, 2023.

{¶ 44} Consequently, crediting P.O.C. with any jail-time credit could not possibly have any effect, since P.O.C. long ago completed his 20-day sentence. The second

assignment of error is overruled as moot.

### III.   Conclusion

{¶ 45} Both of P.O.C.'s assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

LEWIS, J. and HUFFMAN, J., concur.