[Cite as *D.C. v. J.C.*, 2025-Ohio-3275.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| D.C., | : | |
| Plaintiff-Appellee, | : | No. 114330 |
| v. | : | |
| J.C., | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** September 11, 2025

Civil Appeal from the Cuyahoga County Court of Common Pleas
Domestic Relations Division
Case No. DR-23-393435

***Appearances:***

Dworken & Bernstein Co., LPA, and Anna M. Parise, *for appellee.*

Danielle C. Kulik, *for appellant.*

LISA B. FORBES, J.:

{¶ 1} Appellant, J.C. ("Father"), appeals from a divorce decree issued by the Cuyahoga County Domestic Relations Court, as well as the court's adoption of Father's agreed upon judgment entry with appellee, D.C. ("Mother"), concerning the allocation of parental rights and responsibilities over the parties' minor child, A.C.

Father also challenges several procedural decisions made by the court prior to the issuance of these judgments. For the reasons set forth below, we affirm the trial court's decisions.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} Father and Mother were married in May 2010 and their child, A.C., was born in 2011. On February 7, 2023, Mother filed for divorce.

{¶ 3} Acting pro se, despite having counsel, Father filed numerous motions on May 18, and 19, 2023, seeking, among other things, recusal of the trial court judge, a change of venue, and a motion seeking a restraining order.

{¶ 4} On May 24, 2023, Father's counsel filed a motion to withdraw from representation, noting that "Defendant has relieved counsel of its duties." The court granted this motion two days later, on May 26, 2023.

{¶ 5} Father filed 11 pro se motions with the trial court on June 1, 2023, challenging both the trial court judge's and guardian ad litem's ("GAL") continued involvement in the case.

{¶ 6} On June 22, 2023, Father's counsel re-entered the case, filing a notice of appearance as counsel of record.

{¶ 7} On August 1, 2023, the initial trial court judge issued an order "*sua sponte*, by agreement of the parties and for good cause shown," transferring the case to a different judge "for participation in the Families First Program." Over the course of the next six months, the court issued various judgment entries regarding the parties' participation in the Families First Program and other procedural

matters. On February 20, 2024, the new judge issued an order scheduling trial for May 15, 2024. Father's counsel filed another motion to withdraw from the case on April 23, 2024, noting that the "attorney-client relationship has suffered an irreparable breakdown that cannot be repaired." The next day, April 25, 2024, Father moved the court "for a court appointed counsel."

{¶ 8} On May 2, 2024, the court issued three separate journal entries. One granted Father's counsel's motion to withdraw as counsel effective that same day. Another journal entry denied Father's request for appointed counsel. That journal entry noted,

> [t]his matter is currently scheduled for a contested in-person trial on May 15, 2024, and a *Trial Order* was issued on February 20, 2024 which specifically states: "Substitution of counsel shall not be cause for a delay or continuance . . . . No further continuances will be granted based on conflicts with counsel or the parties or the withdrawal of proceedings or other civil case between individual litigants."

The third journal entry issued by the newly assigned judge denied, as moot, Father's prior motions seeking recusal of the former trial judge.

{¶ 9} At trial on May 15, 2024, the parties, with Father acting pro se, signed an agreed judgment entry that allocated parental rights and responsibilities ("Parenting Agreement"). The Parenting Agreement stated that Mother "shall be designated as the sole legal and residential parent for the parties' minor child." It also stated that the "parties and the minor child shall attend and participate in reunification counseling with a counselor" and that

> [t]he parties shall comply with any and all recommendations of the counselors [sic], including, but not limited to, the manner and

frequency of counseling and each parties' participation thereto, parenting time, telephone and/or text communication, and any and all other recommendations.

{¶ 10} The Parenting Agreement was signed by the judge, Father, Mother (through counsel), and the GAL. On the record, both Father and Mother confirmed they agreed with the terms of the agreement, stated they did not have any questions at the time about the Parenting Agreement, and affirmed that they believed it was in the best interest of their minor child. On May 15, 2024 the trial court filed the agreed judgment entry (allocation of parental rights and responsibilities) reflecting the parties' agreement.

{¶ 11} In another May 15, 2024 journal entry, the court scheduled trial on the remaining issues pertaining to the division of property and child support for July 8, 2024. Father was ordered to produce numerous financial documents that he had failed to produce in discovery.

{¶ 12} On July 8, 2024, the court issued a judgment entry that stated that Father "failed to appear [for trial] due to an emergency medical situation," and that the trial would be rescheduled to July 24, 2024. The judgment entry explained in bold type that "no further continuances shall be granted absent an emergency situation."

{¶ 13} On July 17, 2024, an attorney newly retained by Father filed a "Limited Appearance of Counsel" along with a motion to continue the trial scheduled for July 24, 2024. The notice of limited appearance stated that Father had secured new legal representation and that the attorney would formally enter an

appearance if the court granted the requested trial continuance. If the continuance was denied, the notice clarified that the attorney's limited appearance would be withdrawn. Counsel explained that additional time was needed to review the case and adequately prepare and also noted she had a scheduling conflict because of a previously set trial in another county on the same date.

{¶ 14} The trial court denied the motion for continuance, and Father's attorney filed a notice of completion of limited appearance of counsel.

{¶ 15} The case proceeded to trial on July 24, 2024, with Father appearing pro se. The parties entered into a separation and property-settlement agreement ("Separation and Property Settlement Agreement"). The Separation and Property Settlement Agreement reaffirmed that Mother would be the sole residential parent, consistent with the Parenting Agreement. It also addressed additional aspects of parental responsibilities, including health-insurance coverage for the minor child, the allocation of healthcare expenses, and the division of certain real and personal property. The Separation and Property Settlement Agreement left child support, taxes, and tax exemptions to be determined by the court. After the court reviewed the terms of the Separation and Property Settlement Agreement with the parties, testimony was presented on issues that remained unresolved.

{¶ 16} On July 25, 2024, the court entered a judgment entry adopting the parties' Separation and Property Settlement Agreement and on August 6, 2024, issued a judgment entry of divorce (the "divorce decree"). Among other things, the divorce decree incorporated the terms of the Parenting Agreement as well as the

terms of the Separation and Property Settlement Agreement, determined Father's child-support obligation, and gave Mother the right to claim the minor child as a dependent for federal income-tax purposes.

{¶ 17} Father now appeals these decisions by raising the following four assignments of error:

> 1. It was an abuse of the trial court's discretion for the court to not allow a reasonable continuance to get counsel once counsel withdrew prior to trial after the trial was set and substitute counsel had been obtained and requested a continuance.
>
> 2. The parenting agreement should be voided.
>
> 3. It was an abuse of discretion for the court to order a parenting time order that has no parenting time detailed and leaves parenting time up to a counselor.
>
> 4. It was an error an abuse of discretion for the trial court to not hear testimony related to all pending motions at trial.

## II. LAW AND ANALYSIS

### A. First Assignment of Error: Motion for a Continuance

{¶ 18} In his first assignment of error, Father asserts that the trial court erred in denying his request for a continuance of the July 24, 2024 trial to obtain legal counsel. A trial court's denial of a motion for continuance is reviewed for an abuse of discretion. *See In re Z.J.*, 2020-Ohio-383, ¶ 15 (8th Dist.). A trial court abuses its discretion when its decision is unreasonable, arbitrary, or unconscionable. *See Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). Both the United States and Ohio Supreme Courts have recognized that "'[t]here are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to

violate due process.'" *State v. Unger*, 67 Ohio St.2d 65, 67 (1981), quoting *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964). Rather, "'[t]he answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.'" *Id.*, quoting *Ungar* at 589.

{¶ 19} Factors to consider when determining whether a trial court abused its discretion in denying a continuance include:

> [T]he length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case.

*Unger* at 67-68.

{¶ 20} Father maintains that the trial court's denial of his request for a continuance was unreasonable, because it effectively compelled him to proceed pro se at trial, since his counsel withdrew on April 23, 2024, three weeks before the first scheduled trial on May 15, 2024. Father additionally argues that it was unreasonable for the court to deny his request for a continuance where the court had previously denied his request for court-appointed counsel and he was facing possible contempt of court because of a pending motion filed by Mother's counsel asking for Father to show cause why he should not be held in contempt for failing to produce certain court-ordered discovery items. Father asserts that because of the pending contempt motion, he had the right to counsel. Additionally, Father asserts that he had valid grounds for seeking a continuance: he retained new counsel only

one week before the rescheduled trial date of July 24, 2024, that attorney required adequate time to review the case and prepare, and the new attorney had a scheduling conflict because of a previously set trial on the same date. We are not persuaded by Father's arguments.

{¶ 21} Father's claim that he had a right to counsel during his civil-divorce trial because of a pending motion to show cause why he should not be held in contempt for failing to produce discovery, is incorrect. The Ohio Supreme Court has made clear that there is no constitutional right to counsel in civil-contempt proceedings. *See Liming v. Damos*, 2012-Ohio-4783, ¶ 11-12.

{¶ 22} Additionally, Father had three months between the filing of counsel's notice of withdrawal on April 23, 2024, and the trial scheduled for July 24, 2024. Aside from filing his motion requesting the appointment of counsel, which was denied on May 2, 2024, the record reflects no meaningful effort by Father to obtain new legal representation until approximately one week before the trial. By that point, Father had already failed to appear at the previously scheduled trial on July 8, 2024, prompting the court to reschedule trial to July 24, 2024. That court order stated that trial would not be continued again, absent an emergency. Father's late retention of new counsel, along with counsel's need for additional preparation time and a scheduling conflict, does not constitute an emergency sufficient to override the court's prior order against further, nonemergency induced, continuances. Under these circumstances, considering the *Unger* factors, we find no abuse of discretion in the trial court's denial of Father's motion for a trial continuance.

**B. Second Assignment of Error: the Parenting Agreement**

{¶ 23} In his second assignment of error, Father contends that the Parenting Agreement, executed on May 15, 2024, should be invalidated on the grounds that there was no meeting of the minds between himself and Mother with regard to the provision in the agreement making Mother the sole residential parent. He also argues that he did not enter into the Parenting Agreement knowingly, voluntarily, and intelligently. We disagree.

{¶ 24} Parties involved in divorce proceedings may enter into settlement agreements, including those addressing parenting rights and visitation. *See Bottom v. Jankovic*, 2013-Ohio-491, ¶ 10-11 (8th Dist.). Such agreements are treated as contracts, and, like any contract, their validity depends on the existence of a "meeting of the minds" between the parties. *See In re Spence*, 2008-Ohio-2127, ¶ 30 (11th Dist.); *see also Kostelnik v. Helper*, 2002-Ohio-2985, ¶ 16 ("A meeting of the minds as to the essential terms of the contract is a requirement to enforcing the contract.").

{¶ 25} Father asserts that there was no meeting of the minds with regard to the provision in the May 15, 2024 Parenting Agreement that Mother be the sole residential parent. He makes this argument based on the following exchange that occurred at the May 15, 2024 trial when discussing the proposed terms of the agreement:

> Father: I don't have a problem with the reunification counseling. What I have a problem with is right here in 10, when you go down to the second paragraph. It is saying plaintiff's sole design as sole legal

residential parent for the minor child, that's what I have a problem with.

Court: So when I asked you about that before, you said that you were in agreement with that.

Father: I don't have a problem with the counselor, but this statement right here, it is set up saying on here, it says, "Neither party has filed a Proposed Shared Parenting Plan within the 30 days of the final hearing." Now I will agree with that. I accept that.

Court: So you are okay with her being designated as a residential parent?

Father: Yes

{¶ 26} Father argues, based on the above exchange, that he did not agree to Mother being designated as the sole residential parent. While we acknowledge that the exchange does not include an explicit statement from the trial court judge confirming Father's agreement to Mother being the sole residential parent, as opposed to *a* residential parent, the broader record supports the conclusion that Father knowingly, voluntarily, and intelligently entered into the agreement, and that there was a meeting of the minds regarding this term.

{¶ 27} Following further discussion among the court, Father, the GAL, and Mother's counsel, the trial court judge stated: "All right. Then, so we can do an Agreed Judgment Entry today giving sole custody to [Mother], and then take the provisions here and incorporate them." Father raised no objection to this statement.

{¶ 28} After the parties executed the Parenting Agreement, its terms were read into the record. The trial court then addressed both parties directly, asking whether they had any questions about the Parenting Agreement. Both Father and

Mother responded, "No." The judge then inquired whether they believed the terms of the Parenting Agreement were in the best interest of their minor child. Mother answered, "Yes," while Father responded, "No." The following exchange then occurred:

Court: What is your objection to the agreement?

Father: I haven't seen my child in almost a year, and I had to have the police go out to the house to make sure that she was still alive, because I have tried to call [Mother], I have tried to call her trying, you know, "just let me see her face." The police have to go over there for her to step around the vehicle, so I can see that she was alive and well. You see there is no communication. I don't know why and none of that stuff —

Court: But this agreement addresses that, because in this agreement it requires both you and [Mother] to engage in reunification counseling, and also your [minor child] as well, so you will be able to see her during these counseling sessions.

Father: Okay.

Court: And you can interact with her, and from there you can establish your parenting time.

Father: Yes, ma'am.

Court: Understanding that explanation, do you find this agreement to be in your daughter's best interest at this time?

Father: Yes.

Court: Okay. And you agree to be bound by the terms of the agreement sir?

Father: What you just explained, yes.

{¶ 29} The record reflects that the terms of the Parenting Agreement were explained to Father by the trial court judge, that Father acknowledged his understanding of, and agreement to, those terms, and that Father signed the

document memorializing his consent to the agreement. Father has identified nothing to the contrary in the record.

{¶ 30} Under these circumstances, we cannot conclude that there was no meeting of the minds regarding the residential-parent provision of the Parenting Agreement and we cannot conclude that Father's agreement was not knowing, voluntary and intelligent. Accordingly, we overrule Father's assignment of error challenging the validity of the May 15, 2024 Parenting Agreement.

**C. Third Assignment of Error: Parenting Time**

{¶ 31} In the divorce decree, under the section titled "Allocation of Parental Rights and Responsibilities," the trial court designated Mother as the sole residential parent and further stated:

> [T]he parent who is not the residential parent shall have parenting time in accordance with the Agreed Judgment Entry (Allocation of Parental Rights and Responsibilities) filed May 15, 2024, and attached as Exhibit C and incorporated by reference.

{¶ 32} The Parenting Agreement requires Father, Mother, and the minor child to participate in reunification counseling and further states:

> the parties shall comply with any and all recommendations of the counselor, including, but not limited to, the manner and frequency of counseling and each parties' participation thereto, parenting time, telephone and/or text communication, and any and all other recommendations.

{¶ 33} In his third assignment of error, Father argues that the trial court erred by incorporating the reunification counseling provision from the Parenting Agreement into the divorce decree instead of establishing a specific parenting-time schedule of its own. He contends that this approach violates the court's statutory

obligation under R.C. 3109.051(A) to "include in its final decree a specific schedule of parenting time for the [nonresidential] parent." Father maintains that by deferring parenting-time decisions to the reunification counselor, the trial court abdicated its statutory responsibility under R.C. 3109.051(A).

{¶ 34} A trial court "enjoys broad discretion when setting parenting time and determining the conditions under which parenting time will take place." *Cwik v. Cwik,* 2011-Ohio-463, ¶ 42 (1st Dist.). We, thus, review a trial court's award of parenting time for an abuse of discretion. *See id.*

{¶ 35} We find that the trial court did not abuse its discretion by incorporating into the divorce decree the visitation plan previously agreed upon by the parties. The decree is sufficiently specific, directing the parties to comply with the Parenting Agreement, which requires them to work with a reunification counselor to facilitate Father's ongoing parenting time with the child. This is not a case in which the trial court failed to allocate parenting time to the nonresidential parent in violation of R.C. 3109.051(A). Rather, the court properly ordered parenting time in accordance with the parties' prior agreement. Under these particular circumstances, where the parties have agreed to a specific parenting-time plan, we conclude that the trial court acted within its discretion by ordering the parties to adhere to the agreed-upon plan. *See, e.g., Trent v. Taylor*, 2017-Ohio-7189, ¶ 35-39 (10th Dist.) (holding that the trial court did not abuse its discretion in allocating parenting time by ordering the parties to adhere to an agreement to follow

the recommendations of a reunification counselor, which implicitly governed parenting time).

### D. Fourth Assignment of Error:  Motions

{¶ 36} In his fourth assignment of error, Father argues that the trial court erred by not permitting testimony at trial on all pending motions.  Father fails to clearly identify which motions he is referring to, stating only that

> the docket reveals that many motions were set for trial on July 24, 2024 and [Father] was not able to provide testimony on most of them including but not limited to his MOTION FOR FRAUD COMMITTED MO.# 460024 FILED ON 05/19/2023 and MOTION FOR SPOUSAL ABUSE MO.# 460127 FILED ON 05/23/2023.

{¶ 37} "It is the duty of the appellant, not the appellate court, to construct the legal arguments necessary to support the appellant's assignments of error." *Bond v. Canal Winchester*, 2008-Ohio-945, ¶ 16 (10th Dist.).  Accordingly, we limit our review to the specific motions Father has identified — the "motion for fraud committed" and the "motion for spousal abuse."

{¶ 38} The trial court did not explicitly rule on the motion for fraud committed or the motion for spousal abuse.  When a trial court fails to rule on a motion, the motion is deemed denied once the court enters final judgment.  *See State v. Nikolic*, 2020-Ohio-3718, ¶ 5 (8th Dist.), citing *Savage v. Cody-Zeigler, Inc.*, 2006-Ohio-2760, ¶ 28 (4th Dist.) (Motions that a trial court fails to explicitly rule upon are deemed denied once a court enters final judgment.).  Accordingly, both of these motions are considered denied.

{¶ 39} Here, Father does not appeal the denial of the motions themselves, rather his sole contention is that he was not allowed to testify regarding the motions during the July 24, 2024 trial. He makes a vague assertion that such testimony would have been relevant to the court's consideration of custody and parenting time and what would be in the child's best interests.

{¶ 40} We find no merit in this argument. Custody, parenting time, and best interests were not at issue during the July 24, 2024 trial, as the parties had already entered into a joint Parenting Agreement on May 15, 2024, that resolved these questions. Therefore, the trial court properly focused Father's testimony on the remaining issues before the court, specifically, certain aspects of marital property and child support.

{¶ 41} At the July 24, 2024 trial, the trial court allowed Father to present testimony related to his motion for fraud, insofar as it pertained to alleged IRS fraud by Mother, as this was somewhat relevant to the child-support determination. In contrast, the motion concerning spousal abuse sought to restrict Mother and her son from having contact with Father and his daughter, alleging that Mother and her son had engaged in threatening behavior toward Father. Upon review, we find that testimony on this issue bore no relevance to the determination of child support or the division of property. Therefore, we conclude that the trial court did not err in excluding such testimony.

{¶ 42} Furthermore, a motion is a document submitted to the court to request a specific form of relief or an order. *See* Civ.R. 7(B)(1). The purpose of a

motion is not to introduce or establish grounds for testimony on unrelated matters set for trial. In this case, Father had the opportunity to address custody, parenting time, and the best interests of the minor child during the trial held on May 15, 2024. That proceeding ultimately resulted in Father entering into the Parenting Agreement that he acknowledged, on the record, was in the best interests of his child.

## III. CONCLUSION

{¶ 43} For the foregoing reasons, we overrule appellant's assignments of error. We affirm the trial court's judgment entry adopting the parties' Parenting Agreement, and affirm the trial court's judgment entry of divorce entered on August 6, 2024.

{¶ 44} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LISA B. FORBES, JUDGE

EILEEN A. GALLAGHER, A.J., and
ANITA LASTER MAYS, J., CONCUR